**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dereck Ricardo HOSKINS,
Defendant–Appellant.**

No. 00–50045.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 2002

Filed March 7, 2002.

Richard D. Rome, Van Nuys, CA, for the defendant-appellant.

Sally L. Meloch, Assistant United States Attorney, United States Attorney's Office, Los Angeles, CA, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, CUDAHY *, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge.

Dereck R. Hoskins was convicted for his participation in the robbery of a K Mart store in Los Angeles, California. At the time of the robbery, Hoskins had been

* The Honorable Richard Cudahy, Senior United States Circuit Judge for the United States Court of Appeals, Seventh Circuit, sitting by designation.

working for only a month as a security guard at the store. He helped plan and carry out the robbery while posing as a "victim" of the armed robbery. Hoskins appeals his conviction under 18 U.S.C. § 924(c), arguing that there was insufficient evidence to support the conviction. He also challenges the two two-level sentencing enhancements imposed under U.S.S.G. § 2B3.1(b)(4)(B) and § 3B1.3. We affirm the conviction, but reverse the sentence in part because the abuse of trust enhancement under U.S.S.G. § 3B1.3 is not applicable to Hoskins.

## BACKGROUND

Hoskins was charged for his involvement in a single robbery of a K Mart store on November 9, 1997. Although that robbery was part of a series of related K Mart robberies that occurred between May 1997 and January 1998, only the November 9 robbery is at issue in this appeal.

At the time of the robbery, Hoskins had just completed his first month working as a security guard at a K Mart store in Los Angeles. Yvette Crystal Wade, one of Hoskins's co-defendants and his girlfriend at the time, helped Hoskins get the job; she informed Hoskins of the security guard position and served as a reference for him. Wade, who worked at various K Mart stores between 1985 and 1997, was also involved in several of the other robberies.

As a plainclothes security guard, Hoskins was responsible for sitting in the security room and watching the security monitors between 8:00 and 10:00 am each morning; at least one of the security cameras was trained in on the cash room. Hoskins was supposed to call 911 if he observed any suspicious activity. Hoskins was responsible for ensuring that video recordings were being made of the surveillance. In addition, Hoskins had safety-related duties, such as ensuring that spills on the store floor were cleaned up promptly.

Hoskins and Wade were among several who plotted and participated in the November 9 robbery. The night before the robbery Hoskins and the other conspirators met to plan the caper. At the meeting, it was decided that Lorenzo Gregge would be the actual robber. Once Gregge was inside the K Mart store, Hoskins was to give him a signal that it was okay to proceed with the robbery. Among other things, the conspirators also planned Gregge's getaway from the store. On the morning of the robbery, the conspirators, including Hoskins, met again to confirm their plan. Gregge had a gun and pair of handcuffs in his possession at this meeting.

After the morning meeting, the conspirators proceeded to the K Mart. Instead of watching the security monitors as his employer required, Hoskins stationed himself on the sales floor so that he could play his assigned role in the robbery. After receiving the agreed upon signal from Hoskins, Gregge followed Hoskins from the sales floor to the store's cash room. Maria Villegas was the attendant in the cash room that morning. Gregge, with a gun drawn, instructed Villegas to open the door to the "cage" where the cash was kept. Gregge instructed Villegas and Hoskins to lie down on the floor; he gave Hoskins the handcuffs and instructed him to attach himself to Villegas. Hoskins, however, as part of his effort to act scared, was shaking so badly that he was unable to do so. Consequently, Villegas did the cuffing. Gregge pointed the gun at Hoskins and Villegas and instructed them to "stay down." After collecting the money in the cash cage, Gregge exited the store and was driven away by another participant as planned.

Hoskins was convicted of conspiracy to interfere with commerce by robbery and interference with commerce by robbery in violation of 18 U.S.C. § 1951 and of carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The district court sentenced Hoskins to 117 months imprisonment. The district court determined that Hoskins had a Criminal History Category of I and a total offense level of 25 for a range of 57 to 71 months. In addition, § 924(c) entails a 60 month mandatory minimum sentence. The offense level included a two-level increase, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), for physically restraining a victim while committing robbery, and a two-level increase for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3.

## DISCUSSION

Hoskins appeals his conviction under § 924(c) and the application of the two sentencing enhancements.

## I. SECTION 924(C)

 We review de novo Hoskins's claim that there was insufficient evidence to support his conviction under § 924(c). *United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir.2001). A conviction is supported by sufficient evidence if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Crawford*, 239 F.3d 1086, 1092 (9th Cir.2000).

 Section 924(c) establishes a five-year mandatory minimum sentence for "a person who . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," in connection with a "crime of violence." Although Gregge, not Hoskins, possessed and used a firearm during the robbery, Hoskins is vicariously liable as one of Gregge's co-conspirators for any reasonably foreseeable crimes that were committed in furtherance of the conspiracy. *See United States v. Fonseca–Caro*, 114 F.3d 906, 907 (9th Cir.1997) (applying vicarious liability for § 924(c) offense). The question on appeal is whether there was sufficient evidence to support a conviction on the ground that a co-conspirator's carrying a firearm while committing the K Mart robbery was foreseeable.

Hoskins emphasizes the absence of any evidence indicating that a gun was explicitly mentioned or revealed during the two robbery planning meetings. The government, however, is not required to establish that Hoskins had actual knowledge of the gun. The touchstone is foreseeability. *See United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1203 (9th Cir.2000). In *Alvarez–Valenzuela*, the defendant was invited, in exchange for money, to help carry marijuana across the U.S.-Mexico border. Alvarez was casually invited to participate in the smuggling by a friend who was working as a guide for the traffickers. One of the traffickers had a gun. There was only scant evidence that Alvarez had actually seen the gun. Nonetheless, we affirmed the § 924(c) conviction, reasoning that, "[b]oth the value of [the] marijuana and the nature of violence in the drug trade support an inference that Alvarez could have foreseen that a gun might be present." *Id.* at 1204 We rejected Alvarez's effort to "turn the case on the fact that there was no evidence that he personally possessed the gun." *Id.* at 1203.

In order for Hoskins to be found vicariously liable for the § 924(c) offense, he must have had a sufficiently high level of involvement in the robbery. *See United States v. Castaneda*, 9 F.3d 761, 766–68 (9th Cir.1993) (vacating 924(c) conviction on foreseeability grounds where defendant's relationship to underlying drug

transaction was tenuous), *over ruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000). Were he a "bit" player, the inference of foreseeability might be marginal. Here, however, there is considerable evidence evincing Hoskins's intensive involvement in the robbery's planning and execution, as well as a sufficient basis to conclude that use of a gun was foreseeable.

■ *The robbery was planned in detail during the two meetings* that occurred the night before the robbery and the morning of the robbery. Hoskins participated in both meetings. During the course of those meetings, it became clear that Hoskins would have a primary role. Indeed, without Hoskins's assistance, the plan to overtake the cash office would have had no teeth. This is not a case of Hoskins playing a tangential or casual role in the crime. His involvement was integral to the success of the conspiracy.

■ As to the foreseeability of the use of a gun, Gregge had the firearm and handcuffs in his possession during the meeting that occurred on the morning of the robbery. In addition, Hoskins was involved in a romantic relationship with Wade who had participated in a series of previous armed K Mart robberies that involved many of the same conspirators who planned the November 9 robbery. The crux of the plan for this robbery was that Hoskins would become a victim and would submit to the robbers. It is reasonable to infer that the plan must have envisioned some use of force or intimidation in order to overtake the cash room. Drawing all inferences in favor of the government, as we must, it was reasonable for the jury to surmise that use of a weapon would be required in order to appear to subdue both the security guard and the individual in charge of the cash room. In short, the evidence in total was sufficient to permit a reasonable juror to conclude that Gregge's carrying a firearm was foreseeable.

## II. SENTENCING

■ We next review Hoskins's challenge to his sentencing enhancements. The interpretation of a sentencing guideline is subject to de novo review, *United States v. Reyes–Pacheco*, 248 F.3d 942, 945 (9th Cir. 2001), whereas factual findings are reviewed for clear error, *see United States v. Caperna*, 251 F.3d 827, 830 (9th Cir.2001).

### A. SECTION 2B3.1(b)(4)(B)

■ Hoskins received a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(B) which instructs that, "if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels." It is undisputed that the attendant in the cash room, Villegas, was restrained in the commission of the robbery. Hoskins argues that he did not actually restrain Villegas. Rather, she had to cuff him on account of his feigned paroxysm of fear. The Sentencing Guidelines provide that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" should be considered when imposing enhancements. U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Shaw*, 91 F.3d 86, 88–89 (9th Cir.1996) (affirming two-level enhancement under § 2B3.1(b)(4)(B) where co-conspirator restrained bank employee during robbery and defendant was aware that he and co-defendants were going to commit robbery, but was not necessarily aware of all of the robbery plan's details).

The issue on appeal, then, is whether restraining Villegas was foreseeable. This is a question of fact reviewed for clear error. As the district court concluded after reviewing the evidence, "it's clear that it would be reasonable that someone would

have to be restrained." Because the plan involved a takeover of the cash room and because it was likely that a K Mart employee would be working in or near the cash room, it was not clearly erroneous for the district court to conclude that restraining Villegas was foreseeable.

## B. SECTION 3B1.3

■ Hoskins was subjected to a two-level increase in his offense level pursuant to U.S.S.G. § 3B1.3 because he capitalized upon his position as a security guard to help engineer the K Mart robbery. Section 3B1.3 provides for the two-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense...." Application of the abuse of trust enhancement is a mixed question of law and fact; for that reason, de novo review applies. *United States v. Medrano*, 241 F.3d 740, 746 (9th Cir.2001) (applying de novo review to district court's enhancement of a bank teller's sentence).

■ There is no significant dispute that Hoskins used his position as a security guard at K Mart to help commit the robbery. Facilitation of the offense is only one prong of the guideline. It is not so clear, however, that another equally important prong was met, namely whether Hoskins's position as a security guard was a "position of public or private trust" within the meaning of § 3B1.3. We hold that it was not.

The application note accompanying § 3B1.3 refers to a position of public or private trust as one "characterized by professional or managerial discretion." [1] The note goes on to explain that such a position would entail "substantial discretionary judgment" and that an individual holding such a position would ordinarily be "subject to significantly less supervision" than employees who perform primarily non-discretionary functions.

■ Determining whether a position satisfies § 3B1.3 is not simply a matter of nomenclature. For example, the Ninth Circuit has already rejected the idea that there is a "low-level employee" exception to the abuse of trust enhancement. *United States v. Oplinger*, 150 F.3d 1061, 1069 (9th Cir.1998). Rather, the court must conduct a functional analysis of the position in order to ascertain whether it is characterized by the kind of "managerial or professional discretion" that creates the "freedom to commit a difficult-to-detect wrong." *See United States v. Hill*, 915 F.2d 502, 506 (9th Cir.1990).

In *Hill*, we highlighted two indicia of the existence of such discretionary authority: (1) "the inability of the trustor objectively and expediently to determine the trustee's honesty" and (2) "the ease with which the

---

1. Application Note 1 reads as follows:

"Public or private trust refers" to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the of-

fense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

trustee's activities can be observed." *Id.* There, the court determined that a cross-country truck driver who stole the cargo he was charged with delivering was properly subject to an enhancement under § 3B1.3. *Id.* at 507.

In Hoskins's case, there can be little doubt that he breached his employer's trust in a practical sense by participating in the robbery. Section 3B1.3, however, does not apply simply because an employee has breached an employer's trust; otherwise, every inside job would result in an enhancement and the functional analysis would be superfluous. *See United States v. Hathcoat,* 30 F.3d 913, 916 (7th Cir. 1994) (stating in embezzlement case that "an abuse of trust under the Guidelines requires something more" than just "fraudulently appropriating the property of another."). Rather, we must follow the Application Note and analyze whether there was a "position of trust." [2]

Hoskins's position was not characterized by the kind of discretionary authority described in § 3B1.3. He was subject to supervision and his duties as a security guard were quite circumscribed. Hoskins's primary responsibility was simply to monitor video surveillance of the store and to call 911 in the case of any suspicious activity. An additional responsibility was to look for and rectify minor safety problems. Nothing in the record suggests that he enjoyed any sort of meaningful discretion in carrying out these responsibilities. The two *Hill* indicia are noticeably absent. It was not difficult for K Mart's management to objectively and expediently determine Hoskins's honesty or observe his whereabouts. A quick check of the security booth was all that was required to see if Hoskins was on duty. Hoskins was supposed to be sitting in the security room watching security monitors between 8:00 and 10:00 am. He was required to clock-in. Indeed, Hoskins's supervisor warned Hoskins that K Mart nearly fired another employee for leaving the security office to use the restroom. Generally, those occupying positions characterized by professional or managerial discretion would not be subjected to such harsh consequences for taking a bathroom break.

In short, Hoskins was an ordinary employee who had no management function and virtually no discretion in the exercise of his duties. Hoskins offered K Mart no special skill or knowledge. The fact that he was associated with store security is insufficient to overcome the absence of these key criteria. Our conclusion is in accord with the Eleventh Circuit's holding in *United States v. Ward,* 222 F.3d 909, 911–13 (11th Cir.2000) (guarding a Brinks armored car does not entail the requisite degree of discretion to be considered a position of public or private trust) and the Eight Circuit's conclusion in *United States v. Jankowski,* 194 F.3d 878 (8th Cir.1999) (position of armored car company messenger fell "far short" of meeting criteria of public or private trust). The two-level enhancement under U.S.S.G. § 3B1.3 should not have been imposed; we reverse this aspect of Hoskins's sentence and remand for sentencing.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

---

**2.** The government cites *United States v. Parker,* 903 F.2d 91 (2d Cir.1990), as an example of a case in which a security guard was determined to possess the requisite discretion to justify imposing the public trust enhance-

ment. In *Parker,* however, the court did not address the position of trust issue and instead focused on whether Parker used his position as a security guard to commit the crime. 903 F.2d at 104.