**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ANDREW LEE CARTER, Jr.,
          *Defendant-Appellant.*

No. 05-50303

D.C. No.
CR 02-0904 WJR

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ANDREW LEE CARTER, Jr.,
          *Defendant-Appellant.*

No. 05-50321

D.C. No.
CR 02-1215 WJR

OPINION

Appeals from the United States District Court
for the Central District of California
William J. Rea and Dale S. Fischer, District Judges,
Presiding*

Argued and Submitted
October 25, 2006—Pasadena, California
Submission Vacated and Deferred October 26, 2006**
Resubmitted June 25, 2008

Filed March 30, 2009

*These cases were reassigned to Judge Fischer on August 9, 2005, due to the death of Judge Rea.

**Submission of this case was vacated and deferred pending the en banc court's decision in *United States v. Carty*, 520 F.3d 984 (9th Cir.) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008).

Before: A. Wallace Tashima, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judges Tashima and Ikuta;***
Dissent in Part by Judge Tashima

***Judge Ikuta authored Part IV of the Discussion section.

## COUNSEL

Wayne R. Young, Santa Monica, California, for the defendant-appellant.

Elizabeth R. Yang and Dorothy C. Kim, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge, as to Parts I-III:

Andrew Carter was indicted for two bank robberies — the first on August 1, 2002, in Commerce, California, and the second on August 12, 2002, in Pasadena, California. Carter was charged in both indictments with conspiracy to commit a bank robbery, in violation of 18 U.S.C. §§ 371 and 2113; armed bank robbery, in violation of 18 U.S.C. § 2113; and use of a

firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). He was convicted by a jury on all counts and was sentenced to a 471-month term of imprisonment. Carter timely appealed.

We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We affirm both convictions, but we vacate the sentence and remand for resentencing. In determining Carter's sentence, the district court failed to make the requisite finding that a firearm was brandished. We therefore vacate the sentence and remand for the district court to make the requisite findings.

## BACKGROUND

### I.   Factual Background

#### A.   August 1, 2002, Commerce Robbery

The day before the Commerce robbery, Derrick O'Neal contacted Carter and several others to ask if they wanted to rob a bank. O'Neal and Edward Warren had chosen the bank because it was close to the freeway and did not have security barriers inside. Carter agreed to rob the bank and agreed to meet the following morning. On the morning of the robbery, O'Neal, Warren, Eric Washington, Joseph Alexander, and Edward Hector met at the home of Warren's mother. O'Neal testified that Carter was a few hours late to the meeting because he was trying to get a gun and needed to drop his girlfriend off somewhere. They planned each person's role in the robbery and left for the bank. Carter's role was to "grab the money" from the teller because "he was quick."

Alexander, Carter, Washington, and Hector entered the bank. O'Neal and Warren remained outside as lookouts. Washington stayed in the lobby area, Alexander walked through the bank to watch the back doors, and Carter and Hector went to the teller counter. When Janet Guizar, a finan-

cial services consultant at the bank, saw the men enter, carrying empty bags and spreading out through the bank, she pressed an alarm. Brenda Lopez, the customer service manager, asked Carter and Hector if she could help them, and they said they wanted to open new accounts. Lopez seated them at a desk, and Guizar stated that she would be with them momentarily.

Guizar then went behind the teller counter, told the branch manager to call 911, and picked up a phone to call their corporate security office. Hector and Carter rushed over and told her to hang up the phone. Hector jumped over the teller counter, pointed his gun at two tellers, and told them to put money in his bag. The men left and split up the money, which totaled approximately $3,500.

### B.   August 12, 2002, Pasadena Robbery

O'Neal contacted Carter on August 11, 2002, and told him that he and Warren had found another bank to rob and that Carter should bring a gun. Carter responded that he would try to find a gun. On the morning of the robbery, O'Neal, Warren, Carter, Alexander, and Hector met at Warren's home. They were joined by Larry Washington, Jerry Hughes, Koran Allen, and Cedrick Askew, and they discussed each person's role in the robbery.

When they entered the bank, Hughes displayed his gun, jumped on the teller counter, and demanded the keys. A bank employee gave Hughes cash from several teller drawers. After leaving the bank, the men switched vehicles and stopped to split up the money, which totaled approximately $21,000.

## II.   Procedural Background

### A.   Commerce Robbery

On January 9, 2003, an indictment was filed against Washington and Carter, charging them with conspiracy to commit

bank robbery, armed bank robbery, and brandishing a firearm during a crime of violence. O'Neal and Alexander entered into plea agreements and testified at both trials. O'Neal received a sentence of 105 months, and Alexander was sentenced to 125 months.

Carter moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, but the district court denied the motion. Carter was convicted on all three counts of the indictment.

## B.  Pasadena Robbery

Carter, O'Neal, Washington, Hughes, Allen, Askew, and Alexander were indicted on three counts — conspiracy to commit bank robbery, armed bank robbery, and brandishing a firearm during a crime of violence. A nine-day jury trial commenced on October 14, 2003. On October 15, 2003, Hughes and Askew entered guilty pleas, and Washington pled guilty the following day. Allen, Carter, and Hector proceeded to trial.

Before opening arguments were made, Carter's attorney, Scott Furstman, informed the court during a sidebar that there was a conflict between himself and Carter regarding trial strategy. Furstman explained the conflict as follows:

> I have raised to the court that there may be a conflict as developed between Mr. Carter and myself with regard to the presentation of certain evidence and the strategy to be relied upon. Mr. Carter has always been prepared to accept responsibility for count one and count two — count two not being an armed bank robbery. I have explained to him the elements and the fact that he simply can't plead guilty to a count that is not charged. That being the case, however, Mr. Carter, for example, in my opening statement wanted me to basically admit all elements

that would make out the government's case as to count one and count two. I don't believe that is in Mr. Carter's best interest at this juncture. I told him that I would reserve opening statement to see how the government's evidence plays out; and if he believes it is in his best evidence [sic] to present to the jury an impression that he is guilty of the robberies, so be it. I don't think it's in his best interest.

I assume there are other issues that do bear on the foreseeability aspect with regard to the 924(c) and Mr. Carter's desire and it's his right to testify, potentially. Given the prior conviction that Mr. Carter has and the fact that he had the prior bank robbery that didn't come in, I do not believe that would be in his best interest either. As I say, that's his constitutional right. I can't prevent him from exercising it. But there are some other strategies with regard to potential defense evidence that Mr. Carter and I have discussed that he may wish me to put forth. Again, I do not believe it is in his interest.

. . . Your Honor, we have been through another trial with Mr. Carter. I have appeared before Your Honor for a long time on many occasions. I don't think I've ever come before Your Honor and said that because of this potential conflict and a breakdown because of this difference in terms of trial strategies and the stakes before Mr. Carter are huge. Huge. 25 years alone on this one 924(c), so I'm concerned.

Tr. of 10/16/03 Hr'g at 7-9. Carter told the court that Furstman "basically said everything I needed to say for the record." Furstman "formally" moved to withdraw, and the court then denied the motion with no explanation or inquiry.

Carter moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, based on the insuffi-

ciency of the evidence with respect to the § 924(c) charge. Furstman argued that Carter did not bring a weapon to the meeting, that there were only two weapons used during the robbery, and that neither was used "in direct proximity" to Carter. He further argued that no weapon was recovered from Carter and, in fact, no weapon was ever recovered. The court denied the motion. Carter was convicted on all three counts.

## C.  Sentencing

Carter was sentenced on April 11, 2005 on both robberies. Defense counsel, Donald Randolph,[1] raised several issues at the sentencing hearing and in memoranda filed prior to the hearing. First, he asked the court to exercise its discretion under *United States v. Booker*, 543 U.S. 220 (2005), to impose the statutory minimum sentence of 360 months. He cited numerous personal hardships Carter had endured throughout his life, such as the lack of a relationship with his father, his mother's inability to provide "basic food, utilities, electricity," Carter's attempts as a youth to provide for his family, and his placement in a group home.

Randolph further disputed the number of criminal history points Carter was assessed. Carter received one point for a 2000 charge of possession of narcotics that resulted in diversion. In 2002, Carter was stopped for driving without lights, and he lied about his identity to the officer, resulting in one point for a charge of giving false information to a peace officer, for which he received summary probation. Carter then received two additional criminal history points because the robberies were committed while his diversion was revoked on the narcotics charge and while he was on probation on the false information charge, resulting in four points, which established a criminal history category of III.

---

[1]On May 14, 2004, the court relieved Furstman and appointed Donald Randolph to represent Carter.

Randolph argued that the two additional points for being on summary probation overstated the seriousness of Carter's past conduct. He therefore asked the court to give Carter only two criminal history points, which would result in a criminal history category of II. He also argued that the one point given for the misdemeanor of giving false information overstated the seriousness of Carter's criminal history and asked the court to place him in criminal history category I. He later pointed out that Carter's narcotics offense involved the possession of less than one gram of cocaine. Randolph attempted to raise the argument that there was no finding that the firearm was brandished, which he had raised in his briefs, but the court refused to allow him to argue the issue.

After hearing the arguments regarding Carter's personal background, criminal history category, and potential sentence, the district court stated that the total guideline range was 471-492 months, which was the range calculated by the Presentence Report. The court sentenced Carter to 60 months on each count one conviction, 87 months on each count two conviction, to be served concurrently, and 84 months on count three of the Commerce robbery and 300 months on count three of the Pasadena robbery, both to be served consecutively, resulting in an aggregate sentence of 471 months.

## DISCUSSION

### I. Use of a Firearm

Carter contends that the district court erred in denying his motion for judgment of acquittal on the use of a firearm count. The denial of a motion for judgment of acquittal is reviewed de novo. *United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir. 2005). In reviewing a conviction for sufficiency of the evidence, we "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United*

*States v. Sanders*, 421 F.3d 1044, 1049 (9th Cir. 2005) (quoting *United States v. Segura-Gallegos*, 41 F.3d 1266, 1268 (9th Cir. 1994) (emphasis in original)).

[1] There is no dispute that Carter himself did not use a firearm during the robbery. The question, accordingly, is whether it could be "reasonably foreseen as a necessary or natural consequence of the unlawful agreement" that one of Carter's coconspirators would use a firearm during the robbery. *Pinkerton v. United States*, 328 U.S. 640, 648 (1946).

[1] Although Carter is correct that the evidence indicated that he was late to the meeting at which the robbery was planned, the government need not establish that Carter had actual knowledge that guns would be used. Rather, "[t]he touchstone is foreseeability." *United States v. Hoskins*, 282 F.3d 772, 776 (9th Cir. 2002). "[I]t is reasonable to infer from the nature of the plan — the overtaking of a bank by force and intimidation — that guns would be used." *Allen*, 425 F.3d at 1234. "Drawing all inferences in favor of the government," *Hoskins*, 282 F.3d at 777, it was foreseeable that a gun would be used in the bank robbery. The district court did not err in denying Carter's motion for judgment of acquittal on the use of a firearm count.

## II.   Denial of Motion to Withdraw

[3] Carter's second contention is that the district court abused its discretion in denying the motion to withdraw brought by Furstman. In determining whether an irreconcilable conflict existed between Carter and Furstman, we consider "(1) the adequacy of the district court's inquiry; (2) the extent of any conflict; and (3) the timeliness of the motion." *United States v. McKenna*, 327 F.3d 830, 843 (9th Cir. 2003). The district court's denial of counsel's motion to withdraw is reviewed for an abuse of discretion. *LaGrand v. Stewart*, 133 F.3d 1253, 1269 (9th Cir. 1998).

**[4]** The district court denied the motion to withdraw without explanation. However, the court listened to Furstman's description of the conflict and heard Carter state that he had nothing to add. Moreover, the conflict appeared to be based on trial strategy. A conflict that is based solely on "disputes regarding trial tactics" generally is not the type of conflict that warrants substitution of counsel. *McKenna*, 327 F.3d at 844. The record indicates that the conflict here was not as egregious as those we have held support granting a motion to substitute. *See, e.g.*, *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 779 (9th Cir. 2001) (finding an irreconcilable conflict where the client recounted "threats made by his attorney" against him, and the attorney "expressly called [the client] a liar on two separate occasions"); *United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998) (stating that the attorney "related that he was conflicted because Moore had threatened to sue him and had physically threatened him," and Moore expressed an inability to communicate and dissatisfaction with counsel's handling of a plea bargain).

**[5]** Further, the motion in this case was made on the day that opening statements were to be made, which was the third day of trial. Although "[t]he fact that the motion was made on the eve of trial alone is not dispositive," *Adelzo-Gonzalez*, 268 F.3d at 780, there is no indication that another lawyer was ready, and the jury already had been empaneled. In these circumstances, the denial of the motion was not an abuse of discretion.

## III. Sentencing: Brandishing a Firearm

**[6]** Carter contends the district court erred by sentencing Carter to a seven-year mandatory minimum sentence for brandishing a firearm in the first bank robbery because there was no finding that a firearm was "brandished." Title 18 U.S.C. § 924(c) "provides a three-tier sentencing framework, increasing the mandatory minimum sentence in correlation to the severity of the firearm's involvement with the crime." *United*

*States v. Beaudion*, 416 F.3d 965, 968 (9th Cir. 2005). The statute imposes a minimum five-year sentence for "use" of a firearm during a crime of violence, and a seven-year minimum if the firearm is "brandished." 18 U.S.C. § 924(c)(1)(A). A firearm is brandished if the district court finds: (1) "the open display of the firearm, or knowledge of the firearm's presence by another in some manner" for (2) "the purpose of intimidation." *Beaudion*, 416 F.3d at 968. The key difference between simple "use" of a firearm and "brandishing" the firearm is that "use" is not limited to a purpose of intimidation. *Id.* at 969.

**[7]** The record in this case is not clear whether the district court found a firearm was brandished, rather than merely *used* by an accomplice. When asked by government counsel whether the district court "found by a preponderance of the evidence that a firearm was brandished in both robberies," the district court responded, "Yes, a firearm was present." The language used by the district court is ambiguous: by stating, "Yes," the district court may have found a firearm was brandished, but by stating "a firearm was present," the district court may have instead found a firearm was merely "used" rather than brandished. Because it is unclear whether the district court found the firearm was brandished, we must vacate the seven-year sentence and remand for re-sentencing on the charge of violation of 18 U.S.C. § 924(c). The trial judge, rather than this court, is in a better position to make the determination whether the firearm was "used" or "brandished." The trial judge must make this determination and state it clearly on the record.

IKUTA, Circuit Judge, as to Part IV:

IV

**Sentencing: *Booker* and 18 U.S.C. § 3553 Considerations**

Under the Supreme Court's guidance in *Rita v. United States*, 127 S. Ct. 2456 (2007) and Ninth Circuit case law, the

district court's explanation of its sentence, although brief, was adequate in context. Moreover, under the Supreme Court's guidance in *Gall v. United States*, 128 S. Ct. 586 (2007), the district court did not abuse its discretion by imposing a within-Guidelines sentence.

A

After two separate jury trials before the same judge, Carter was convicted of two counts of armed bank robbery, two counts of conspiracy, and two counts of use of a firearm during a crime of violence. The same district court judge consolidated sentencing and held a sentencing hearing on April 11, 2005. Before the hearing, the parties had the opportunity to review the Presentence Report (PSR), and both submitted objections to the report that were documented in an addendum.

The district court commenced the sentencing hearing by stating, "I've read the presentence report, the addendum to the presentence report and all the other things that go with it." The court then solicited comments from Carter's attorney, Donald Randolph, who reiterated the arguments he had made in response to the PSR. Randolph noted that Carter lacked youthful guidance and that his childhood and young adulthood had been difficult. Randolph also reiterated his argument that the PSR over-represented the seriousness of Carter's criminal history. He urged the court to disregard two criminal history points (imposed because Carter had been on summary probation when the bank robberies had occurred), and then "to go one step further" to discount another criminal history point (for a misdemeanor charge for failing to provide truthful information to a police officer).

In opposition, the government argued that Carter had been given "multiple opportunities . . . to not commit further crimes" and that Carter participated in the first bank robbery less than one month into his probation. The government

asserted that the two points assessed in his criminal history category for committing the crimes on probation "are absolutely warranted in this case, and if the court does not impose that point, as the government points out in his papers it's in essence telling the defendant it is okay not to comply with prior court orders." In addition to noting the court's discretion under *United States v. Booker*, 543 U.S. 220 (2005), the government addressed the factors the court was required to consider under 18 U.S.C. § 3553(a).[2] The government asserted

---

[2]18 U.S.C. § 3553(a) provides:

(a) Factors To Be Considered in Imposing Sentence.— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of

that after taking into account the Guidelines, the history and characteristics of the defendant, the seriousness of the offense, the goals of promoting respect for the law and deterrence, and the need to avoid sentencing disparity, a downward departure from the Guidelines was not warranted. In discussing these factors, the government noted that the court had presided over both of Carter's trials, and so was aware that the crimes Carter committed were serious and violent.

---

Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) or title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing commission into amendments issued under section 994(p) of title 28;

(5) Any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

After hearing both parties' arguments, the court asked Carter if he wished to address the court. Carter declined. The court stated: "Well in view of the fact that the Sentencing Guidelines are advisory only, I will still use them though in considering of the sentence I'm about to impose." The district court then outlined and explained the Guidelines sentencing range for the two convictions. In sum, the Guidelines sentencing range for all counts was 471 to 492 months. The court stated that "[p]ursuant to the Sentencing Reform Act, which is advisory," it would impose a sentence of 471 months, the low end of the Guidelines. The court delineated the term of supervised release and the conditions of such release.

Finally, the district court stated, "Now the justification for this sentence is as follows." The court proceeded to explain:

> This 24 year old defendant is before the court for sentencing after being convicted by a jury trial for armed bank robbery, conspiracy, and the accompanying 18 U.S.C. 924C count in 2 criminal proceedings and 2 armed bank robberies.

> The defendant has 3 convictions for disturbing the peace, possession of a narcotic controlled substance and false information to a peace officer.

> Defendant is subject to a 7 year mandatory sentence to be served consecutively to the Guideline sentence pursuant to 18 U.S.C. section 924C and a 25 year mandatory sentence for a second conviction under 18 U.S.C. 924C to be served consecutively to the Guideline sentence in the first 18 U.S.C. 924C conviction.

> The low end sentence has been recommended and ordered as the Guidelines have adequately taken into consideration defendant's actions and criminal history.

The lengthy sentence is sufficiently punitive and hopefully will deter against any further criminal activity.

The maximum term of supervised release will allow time for the defendant to maximize his restitution payments and to be monitored within the community.

The out-patient drug treatment condition is recommended because of defendant's prior drug-related conviction.

The psychological/psychiatric treatment condition is also recommended because of the defendant's admitted history of counseling for emotional issues.

The defendant has 2 minor children.

After the court imposed the sentence, the government asked:

And finally with regard to the sentence the court has imposed including the Guideline calculations, the advisory guidelines calculations and the mandatory minimum, has the court found that this sentence is reasonable taking into account all the factors and the purposes set forth in 18 U.S.C. § 3553(a)?

The court responded, "Yes. I found my sentence to be reasonable."

B

Carter argues the record fails to establish that the district court exercised its sentencing discretion under *Booker* because the court did not adequately discuss the sentencing factors it must consider under 18 U.S.C. § 3553(a) as they applied to Carter, and because the court did not directly

address Carter's arguments. As a result, Carter contends, the record is insufficient for us to determine whether Carter's sentence was reasonable. The Supreme Court's analysis in *Rita*, 127 S.Ct. 2456, and our decision in *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008), make clear that the district court in this case adequately established the basis for its sentencing decision.

**[8]** When a district court imposes a within-Guidelines sentence, the explanation of its decision-making process may be brief: "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita*, 127 S. Ct. at 2468. In *Rita*, the defendant had argued for a sentence lower than the minimum recommended Guidelines sentence on the grounds that his health, fear of retaliation, and military record warranted leniency beyond what was contemplated by the Guidelines. *Id.* at 2469. After hearing both Rita's and the government's arguments, the district court stated that it was "unable to find that the [report's recommended] sentencing guideline range . . . is an inappropriate guideline range for that, and under 3553 . . . the public needs to be protected if it is true, and I must accept as true the jury verdict." *Id.* at 2462 (alterations in original). When sentencing Rita at the low end of the Guidelines range, the district court stated that such a sentence was "appropriate." *Id.*

**[9]** The Supreme Court held that because "[t]he record makes clear that the sentencing judge listened to each argument" and "considered the supporting evidence," the district court's statement of reasons for the sentence was "brief but legally sufficient." *Id.* at 2469. The district court had no obligation to spell out its conclusion that the Guidelines' range was suitable for this sort of case. Rather, "[w]here a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence

and arguments," the Court did "not believe the law requires the judge to write more extensively." *Id.*

We reached a similar conclusion in *Carty*, where the defendant argued that the district court committed procedural error because it "did not affirmatively state that it considered the § 3553(a) factors." *Carty*, 520 F.3d at 995-96. We rejected Carty's arguments for three reasons. First, we stated that "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 996 (citing *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotation marks omitted)). Second, we noted that "the judge stated that he reviewed the papers; the papers discussed the applicability of § 3553(a) factors; therefore, we take it that the judge considered the relevant factors." *Id.* (citing *Rita*, 127 S. Ct. at 2467). Third, we stated that "sentencing took place after *Booker*, and the parties' memoranda proceeded on the footing that the Guidelines were advisory. The district judge gave no indication that he felt bound by the Guidelines range or bound to treat the Guidelines sentence as presumptively reasonable." *Id.*

**[10]** The guidance provided by *Rita* and *Carty* makes clear that the district court adequately explained the sentence imposed on Carter. As the Supreme Court has explained, the context in which a district court issues a sentence is important. *Rita*, 127 S. Ct. at 2469. Here, as in *Rita* and *Carty*, the district court was familiar with Carter's crimes, personal situation, and both the government's and Carter's arguments regarding sentencing. The district court judge had presided over both of Carter's trials. At sentencing, the court stated that it had read and considered the PSR and the addendum. The court also listened to Carter's request for a reduction of his sentence in light of factors relevant under § 3553(a), including his lack of youthful guidance, his difficult family history, and his argument that his criminal history was over-represented.

**[11]** After giving the parties an opportunity to make their arguments about what sentence should be imposed on Carter, the district court explained both the sentence and the justification for its decision to impose a within-Guidelines sentence. In providing this explanation, the district court addressed many of the § 3553(a) factors. The court recited the Guidelines recommendation, Carter's criminal history category, and the applicable mandatory statutory sentences. *See* 18 U.S.C. § 3553(a)(3), (a)(4)(A) (court to consider "the kinds of sentences available" and "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"). The court acknowledged Carter's convictions for two armed bank robberies, two counts of conspiracy, and two firearm offenses; his three prior convictions; his age; his emotional issues and past drugs use; and the fact that he had two children and potential child support obligations. *See id.* § 3553(a)(1) (court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant"). The court stated that "the Guidelines have adequately taken into consideration defendant's actions and criminal history." *See id.* The court explained that "[t]he lengthy sentence is sufficiently punitive and hopefully will deter against any further criminal activity." *See id.* § 3553(a)(2)(A), (B) (court to consider the need for the sentence imposed "to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct"). The court also noted that the sentence included outpatient drug treatment and psychological or psychiatric treatment to address Carter's prior drug use and prior emotional issues. *See id.* § 3553(a)(2)(D) (court to consider the need for the sentence imposed "to provide the defendant with needed . . . medical care, or other correctional treatment"). The court stated that "the maximum term of supervised release will allow time for the defendant to maximize his restitution payments and to be monitored within the community." *See id.* § 3553(a)(2)(C), (a)(7) (court to consider the need for the sentence imposed "to protect the public from further crimes of

the defendant" and "to provide restitution to any victims of the offense"). Finally, the district court affirmed that it was choosing not to exercise its discretion to depart from the Guidelines based on Carter's argued over-representation of criminal history.

[12] In context, these statements make clear that the district court heard and considered Carter's arguments, considered the § 3553(a) factors, and reached the conclusion that the Guidelines range was suitable to Carter's case. Under *Rita* and *Carty*, this is sufficient.

[13] Carter further argues that the sentence is procedurally flawed because the district court did not directly address Carter's arguments and give reasons for declining to accept those arguments. We rejected this argument in *Carty*, and the same reasoning applies here. In *Carty*, the defendant argued that he merited special leniency because, among other things, he "was a breadwinner for his family with no criminal history; he stopped drinking as a young man; he had a strong family relationship; and he had an underprivileged upbringing and diminished capacity to understand fully the world around him." *Carty*, 520 F.3d at 990. The district court imposed a sentence at the low end of the Guidelines range rather than the even lower sentence sought by the defendant. We held that, although the district court "gave no explicit reasons" for rejecting Carty's arguments and imposing a within-Guidelines sentence, the court had said enough in the context of that case given that the district judge had presided over Carty's trial, reviewed the PSR and the parties' submissions, and listened to argument by both parties at the sentencing hearing. *Id.*; *see also Rita*, 127 S. Ct. at 2469 (holding that there is no procedural error where a sentencing judge could have "added explicitly that he had heard and considered the evidence and argument[s]" but the "context and the record [made] clear that . . . similar[ ] reasoning underlies the judge's conclusion."); *United States v. Perez-Perez*, 512 F.3d 514, 516-17 (9th Cir. 2008) (rejecting defendant's contention of procedural error

because sentencing judge did not "expressly address [his] specific arguments" regarding the seriousness of prior conviction, alleged racial profiling, prior drug addiction, and special family circumstances where the record reflected that the judge listened to them). These cases confirm that the district court here had no obligation to address and resolve each of Carter's arguments on the record.

The dissent attempts to distinguish these cases on the ground that the defendants' arguments in *Rita* and *Carty* were straightforward and uncomplicated, and because in *Rita*, the district court asked the defendant numerous questions about sentencing issues. These distinctions are unpersuasive. The dissent does not explain the nature of the alleged complexity in Carter's argument, and we detect none. Carter merely argued that his prior convictions were insufficiently serious to merit the criminal history category to which he was assigned, and that his underprivileged upbringing constituted a special circumstance for which a below-Guidelines sentence was warranted. These arguments are frequently made and easily understood by a district court. They are no more complex than the arguments made by the defendant in *Rita* regarding the special circumstances of his health, fear of retaliation, and military record; by the defendant in *Carty* regarding his history and characteristics; or by the defendant in *Perez-Perez* regarding the overstated seriousness of his prior offense, alleged racial profiling, prior drug addiction, and special family circumstances. Indeed, Carter's counsel acknowledged that "I am sure the court is very familiar with requests for over-designation of criminal categories under circumstances like this."

**[14]** Nor was the district court obliged to engage the defendant in questions or further discussion, because it is clear from the context that the defense's arguments were heard. *See Carty*, 520 F.3d at 995 (holding that the district court said enough at sentencing where it indicated it had reviewed the PSR and the sentencing memoranda and heard from the

defense's witnesses and counsel). Because the record and context make clear that the judge "considered the evidence and arguments," *Rita*, 127 S. Ct. at 2469, the district court made no procedural error in imposing a within-Guidelines sentence.

## C

Finally, Carter contends he was prejudiced by the district court's failure to consider the § 3553(a) factors because, as a result of the district court's procedural error, his sentence was "greater than necessary," 18 U.S.C. § 3553(a), to meet the purposes of the Sentencing Reform Act. Carter argues that his sentence was greater than necessary because it exceeded sentences for other federal crimes, resulted in unwarranted sentencing disparities with his co-conspirators, and did not take into account his difficult life circumstances. The dissent understands this argument as challenging the reasonableness of Carter's sentence and would hold that Carter's sentence is substantively unreasonable. However, none of the issues raised by Carter or the dissent makes Carter's within-Guidelines sentence substantively unreasonable, particularly in light of the deference we owe to the district court's sentencing decisions and the absence of anything out of the ordinary in Carter's circumstances.

We consider the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall*, 128 S. Ct. at 597. The Supreme Court has directed us to give substantial deference to the district court's determination because it is better situated than we are to determine an appropriate sentence. As the Court explained,

> [T]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not con-

veyed by the record. The sentencing judge has
access to, and greater familiarity with, the individual
case and the individual defendant before him than
the Commission or the appeals court. Moreover, dis-
trict courts have an institutional advantage over
appellate courts in making these sorts of determina-
tions, especially as they see so many more Guide-
lines sentences than appellate courts do.

*Id.* at 597-98 (internal citations, alterations, and quotation
marks omitted). In light of this institutional advantage, "[t]he
fact that the appellate court might reasonably have concluded
that a different sentence was appropriate is insufficient to jus-
tify reversal of the district court." *Id.* at 597. We have held
that "a correctly calculated Guidelines sentence will normally
not be found unreasonable on appeal." *Carty*, 520 F.3d at 988.
Although the district court could have exercised its discretion
to impose a below-Guidelines sentence, the dissent points to
no unusual circumstances that make it an abuse of discretion
for the district court not to have done so here.

[15] None of the issues identified by Carter supports the
conclusion that the district court abused its discretion in
imposing the within-Guidelines sentence. First, Carter con-
tends that his sentence is unreasonable because it was greater
than sentences that would be imposed for other federal crimes
such as airplane hijacking, espionage, or the like. To the
extent Carter is making a challenge under the Equal Protec-
tion Clause to classifications created by Congress, it is well
established that any sentencing disparities between federal
crimes do not create suspect classifications, and are therefore
subject to rational basis review. *See, e.g.*, *United States v.
Ellsworth*, 456 F.3d 1146, 1149 (9th Cir. 2006); *United States
v. Harding,* 971 F.2d 410, 412 (9th Cir. 1992). Carter was
convicted of, and sentenced for, two counts each of conspir-
acy, armed bank robbery, and use of a firearm during a crime
of violence, all while on probation. Congress could rationally
decide to penalize recidivists and offenders who have com-

mitted multiple crimes more severely than first-time offenders and offenders who have committed a single crime. *See, e.g.*, *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1092 (9th Cir. 2007) ("[A]sking whether another crime is inherently more dangerous than illegal reentry misses the point. To survive rational basis review, the key question is whether the criminal reentry [sentence] enhancement bears *some* rational relation to a legitimate government interest or purpose." (emphasis added)); *United States v. Clawson*, 831 F.2d 909, 915 (9th Cir. 1987) ("[A] statute is not rendered irrational simply because Congress knew about other crimes and did not make them subject to enhancement. The courts do not substitute their views about a statute's wisdom for those of Congress unless the statute is arbitrary."). Because "[t]he burden falls on the party attempting to disprove the existence of a rational relationship between a statutory classification and a government objective," *Harding*, 971 F.2d at 413, and because Carter has not carried this burden, this argument fails.

[16] Second, Carter claims that the disparity between the sentence he received and those received by his co-conspirators was unwarranted. This argument fails because none of these co-conspirators was similarly situated to Carter.[3] *See, e.g.*, *United States v. Gonzales-Perez*, 472 F.3d 1158, 1162 (9th Cir. 2007) (analyzing disparate sentence of co-defendant under 3553(a)(6) and concluding that the disparity was warranted because the co-defendant "was processed under a 'fast-track' procedure, and was charged with violating

---

[3]Carter was convicted of two bank robberies in two separate jury trials. Of Carter's nine co-conspirators, only four (O'Neal, Warren, Alexander and Hector) participated in both bank robberies. Of these four, O'Neal and Alexander elected to plead guilty to two counts of bank robbery, one count of conspiracy, and one count of use of a firearm. They testified against Carter at trial and were sentenced to 105 months and 125 months in prison, respectively. Warren was charged with being an accessory after the fact in one of the robberies, and pleaded guilty. Hector was convicted for the Pasadena robbery after a jury trial; however, the government did not prosecute him for the Commerce robbery.

a different statute"); *United States v. Monroe*, 943 F.2d 1007, 1017 (9th Cir. 1991) (holding the district court did not err in imposing disparate sentences on co-defendants because, among other things, the co-defendants were not found guilty of the same offenses and thus were not similarly situated); *United States v. Changa*, 901 F.2d 741, 743-44 (9th Cir. 1990) (holding the district court was justified in imposing different sentences on defendants who were convicted of different crimes). Carter himself recognized that one reason for the disparity between his sentence and that of two of his co-conspirators was due to their decision to cooperate with the government. However, a sentencing disparity based on cooperation is not unreasonable. It is settled that so long as there is "no indication the defendant has been retaliated against for exercising a constitutional right, the government may encourage plea bargains by affording leniency to those who enter pleas. Failure to afford leniency to those who have not demonstrated those attributes on which leniency is based is unequivocally . . . constitutionally prop[er]." *United States v. Narramore*, 36 F.3d 845, 847 (9th Cir. 1994) (citing *Corbitt v. New Jersey*, 439 U.S. 212, 223-24 (1978) (alterations in original) (internal quotation marks omitted)). Therefore, any disparities between Carter's sentence and those of his co-conspirators do not make Carter's sentence substantively unreasonable.

[17] Third, Carter argues that the difficult circumstances of his life make his within-Guidelines sentence unreasonable. The dissent further notes that Carter's offenses were minor and his criminal history category was increased by minor issues. In context, these factors do not make Carter's sentence substantively unreasonable. Carter conspired to commit and participated in two armed bank robberies in two weeks. He knew that guns would be used, actively helped subdue the victims, and shared in the profits. Carter suffered difficulties in his life and his prior offenses were non-violent, but nothing in these circumstances is so atypical as to put him outside the "minerun of roughly similar" cases considered by the Sen-

tencing Commission in formulating the Guidelines, nor are they "so special as to render [his] overall sentence unreasonable." *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008). Therefore the district court did not abuse its discretion in sentencing Carter.

## CONCLUSION

For the foregoing reasons, Carter's convictions are **AFFIRMED.** The seven-year sentence for brandishing a firearm is **VACATED** and **REMANDED** for the district court to determine whether the firearm was brandished for purposes of 18 U.S.C. § 924(c)(1)(A).

---

TASHIMA, Circuit Judge, dissenting, in part:

When we review a sentence, "we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir.) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008). The district court commits "significant procedural error" by "failing to consider the § 3553(a) factors" or by "failing to adequately explain the chosen sentence." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Carter asked the district court to impose a sentence below the range suggested by the sentencing guidelines. In his request, he raised "specific, nonfrivolous argument[s] tethered to [ ] relevant § 3553(a) factor[s]." *Carty*, 520 F.3d at 992. Yet, in imposing sentence, the court gave no indication that it had heard Carter's arguments and imposed sentence with almost no explanation. I believe that the district court erred in failing to address Carter's arguments, failing adequately to consider the § 3553(a) factors, and failing adequately to explain the sentence that was imposed. I therefore respectfully dissent from Part IV of the Discussion section of the majority opinion.

The majority cites a lengthy passage from the sentencing hearing to support its conclusion; however, this passage does not reveal that the district court adequately addressed Carter's arguments and the § 3553 factors. It was apparent to government counsel, Assistant U.S. Attorney Elizabeth R. Yang, that the court's explanation was insufficient, as indicated by the fact that, even after the court gave the statement quoted by the majority, Ms. Yang proceeded to ask the court a series of questions designed to address the inadequacy of the court's statement:

> Ms. Yang:   And with regard to the court's denial of the downward departure request respecting criminal history category, has the court recognized that it has discretion to depart on this ground but chooses not to exercise that discretion?
>
> The Court:   You mean the 20 days.
>
> Ms. Yang:   No, the criminal history category, the over-representation.
>
> The Court:   What did you say?
>
> Ms. Yang:   Does the court recognize that it has discretion to depart based on over-representation of criminal history but chooses not to exercise it's [sic] discretion?
>
> The Court:   Yes.
>
> Ms. Yang:   And finally with regard to the sentence the court has imposed including the guideline calculations, the advisory guideline calculations and the mandatory minimum, has the court found that this sentence is reasonable taking into account all the factors and the purposes set forth in 18 U.S.C. 3553a?

> The Court: Yes. I found my sentence to be reasonable.

Tr. of 4/11/05 Sentencing Hr'g at 26-27.

Carter asked the court to apply the statutory mandatory minimum sentence of 360 months — a sentence already many times longer than those of his coconspirators.[1] He argued that his criminal history category was overrepresented. He received one criminal history point for a conviction for possession of narcotics and one criminal history point for a conviction for giving a false identity to a police officer when he was stopped for driving without his lights on. He received an additional two points because he was on diversion for the narcotics offense and on probation for the false identity offense when he committed the instant offense. Carter asked the court to exercise its discretion and impose a below-guidelines sentence, taking into consideration his difficult childhood, his family situation and his young children, and the rehabilitative effect of what would be, under the statutory minimum, thirty years in prison.

Rather than addressing any of Carter's arguments, the court applied the guidelines sentence, stating that the guidelines had "adequately taken into consideration [Carter's] actions and criminal history," and that the "lengthy sentence is suffi-

---

[1] The bulk of Carter's sentence was due to the statutory mandatory minimum twenty-five year sentence for a subsequent conviction under 18 U.S.C. § 924(c)(1)(C). This court has in the past urged Congress to reconsider the "harsh scheme of mandatory minimum sentences" imposed by § 924. *United States v. Harris*, 154 F.3d 1082, 1085 (9th Cir. 1998); *see also United States v. Hungerford*, 465 F.3d 1113, 1118-22 (9th Cir. 2006) (Reinhardt, J., concurring in the judgment) (describing as "irrational, inhumane, and absurd" a 159-year sentence imposed on a mentally ill woman who had nothing to do with the firearm used in the robberies), *cert. denied*, 127 S. Ct. 2249 (2007). *Harris* and *Hungerford* were decided under the mandatory sentencing regime; thus, the criticism was aimed at Congress' decision to remove all discretion from the sentencing judge.

ciently punitive and hopefully will deter against any further criminal activity." This rote recitation of a few of the § 3553 factors does not begin to constitute "an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Moreover, the court's simple affirmative responses to the government's pointed questions regarding Carter's arguments do not provide a record that "makes clear that the sentencing judge listened to each argument." *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007).

The Supreme Court has instructed that the district court "may not presume that the Guidelines range is reasonable." *Gall*, 128 S. Ct. at 596-97; *see also Rita*, 127 S. Ct. at 2465 (emphasizing that, in determining the merits of the arguments by prosecution and defense that the guidelines sentence should not apply, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). Here, however, the district court presumed the guideline range was reasonable and failed to make any individualized assessment.

"The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468. Yet, the district court did not give any reason for rejecting Carter's arguments regarding his sentence. Unlike cases in which we have found that the district court adequately considered the defendant's specific "history and characteristics," the court did not "consider how the sentencing factors apply to [Carter] and determine whether an individualized sentence [was] warranted." *United States v. Plouffe*, 445 F.3d 1126, 1131 (9th Cir. 2006); *see, e.g.*, *United States v. Stoterau*, 524 F.3d 988, 999-1000 (9th Cir. 2008) (finding that the district court adequately "considered the evidence and arguments of the defendant" where the district court referred to numerous subsections of § 3553(a), and, "at various points in the sentencing hearing, the district court explicitly noted that it had

considered [the defendant's] arguments"), *cert. denied*, 129 S. Ct. 957 (2009).

I echo the concern that such deferential review has made appellate review of sentencing "an empty formality." *Gall*, 128 S. Ct. at 607 (Alito, J., dissenting); *see also United States v. Autery*, 2009 WL 349801, at *12 (9th Cir. 2009) (Tashima, J., dissenting); *United States v. Ruff*, 535 F.3d 999, 1005 (9th Cir. 2008) (Gould, J., dissenting) (in the context of reviewing a sentence for substantive reasonableness, stating that the abuse of discretion standard for reviewing sentencing decisions "is not a rubber stamp of all sentencing decision made by a district judge").[2] Carter's prior offenses were minor and nonviolent, and his criminal history category was increased significantly based solely on his being on probation for the misdemeanor of giving false information when stopped for driving without his lights on.[3] The 471-month sentence Carter received was much longer than the sentences received by the other participants in the robberies.[4] The district court's com-

---

[2]*Gall*, *Autery*, and *Ruff* involved review of the reasonableness of a sentence, rather than the consideration of whether the district court committed procedural error.

[3]The harsh sentence and the district court's failure to acknowledge Carter's arguments stand in stark contrast to *Ruff*, in which a white collar criminal who embezzled more than half a million dollars from his employer received a sentence of one day of imprisonment, a sentence well below the guideline recommendation. The district court in *Ruff* relied, among other factors, on the defendant's age and "his mental, financial and gambling problems." *Ruff*, 535 F.3d at 1006 (Gould, J., dissenting). Carter surely raised personal problems at least as compelling as the defendant in *Ruff*. I agree with Judge Gould that we "ought to consider why it is that such light sentences are all too frequently handed out by district courts for white collar crimes." *Id.*

[4]One of the § 3553(a) factors is "the need to avoid unwarranted sentence disparities. . . ." 18 U.S.C. § 3553(a)(6). The evidence indicates that O'Neal and Warren planned and recruited the participants for both robberies; O'Neal cooperated, and Warren pled, and they received sentences of 105 months and 41 months, respectively. The record also indicates that Edward Hector participated in both robberies, but, for unknown reasons,

plete failure to acknowledge Carter's arguments, and, based on its exchange with Ms. Yang, its failure even to have heard the arguments, do not "communicate[ ] that the parties' arguments have been heard, and that a reasoned decision has been made." *Carty*, 520 F.3d at 992. Section 3553 requires the court to state "the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), because "[c]onfidence in a judge's use of reason underlies the public's trust in the judicial institution," *Rita*, 127 S. Ct. at 2468. In my mind, the majority's reliance on the district court's cursory explanation for the harsh sentence imposed does not constitute "meaningful appellate review." *Carty*, 520 F.3d at 992.

It is true that "when a defendant's arguments are straightforward and uncomplicated, the district court does not abuse its discretion when it listens to the defendant's arguments and then 'simply [finds those] circumstances insufficient to warrant a sentence lower than the Guidelines range.' " *Stoterau*, 524 F.3d at 999 (quoting *Carty*, 520 F.3d at 995) (alteration in original). However, the arguments regarding Carter's criminal history are not straightforward and uncomplicated. Moreover, in *Rita*, from which this principle is taken, the district court asked numerous questions about all of the sentencing issues raised by the parties before giving its "brief but legally sufficient" statement of reasons for the sentence it imposed. *Rita*, 127 S. Ct. at 2469; *see* Joint Appendix, Vol. I, at 48-91, *Rita v. United States*, 127 S. Ct. 2456 (2007) (No. 06-5754) (transcript of sentencing hearing); *cf. United States v. Perez-Perez*, 512 F.3d 514, 516-17 (9th Cir. 2008) (finding the sentence reasonable where the district court expressly cited the defendant's extensive criminal history and the need for deter-

---

was charged in only one; he went to trial and received a sentence of 240 months. The other participants received sentences ranging from 125 months to 137 months. The only participant who received a sentence remotely close to Carter's was Koran Allen, who received a 319-month sentence, but Allen was a career offender with a long criminal history, including several violent offenses.

rence and "actively questioned and engaged the defense" during sentencing). Here, by contrast, the court did not acknowledge or address the arguments raised by Carter at all.

The nature of Carter's prior offenses, the length of his sentence, and the district court's failure to address any of the specific arguments raised by Carter, coupled with the minimal consideration of the § 3553(a) factors as applied to Carter, lead me to conclude that not only did the district court commit procedural error by failing adequately to consider the § 3553(a) factors, failing to make an individualized determination, and failing to consider the arguments raised by Carter, but that the sentence is not reasonable. For these reasons, I respectfully dissent from Part IV and the majority's conclusion that Carter's sentence was reasonable.