# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

KATIE SUE CONTRERAS,
    *Defendant-Appellant.*

No. 08-50126

DC No.
2:06-cr-00353 SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
November 19, 2008—Pasadena, California

Filed September 17, 2009

Before: Myron H. Bright,* Michael Daly Hawkins, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Tashima

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Michael Jay Stern, Assistant U.S. Attorney, Los Angeles, California, for the plaintiff-appellee.

Thomas W. Kielty, Los Angeles, California, for the defendant-appellant.

## OPINION

TASHIMA, Circuit Judge:

Katie Sue Contreras was convicted for her participation in a drug-smuggling conspiracy operated out of Ironwood State Prison, where she worked as a prison cook. She appeals her

sentence, arguing that the district court's two-level enhancement of her offense level for abuse of a position of trust under United States Sentencing Guideline ("U.S.S.G.") § 3B1.3 was in error.

We agree, and reverse the sentence.[1] Contreras' position at the prison did not involve any "professional or managerial discretion," U.S.S.G. § 3B1.3 cmt. n.1 (2005), and therefore she did not hold a position of trust under the Guidelines. To the degree *United States v. Hill*, 915 F.2d 502 (9th Cir. 1990), compels a different result, it antedates and conflicts with the current version of the commentary to the Guidelines, and, therefore, has been overruled.

## I. Jurisdiction and Standard of Review

We have jurisdiction over Contreras' appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because this appeal turns on an interpretation of the Sentencing Guidelines, it is a question of law which we review de novo. *See United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007) ("We review de novo the district court's interpretation of the United States Sentencing Guidelines.").[2] "On appeal, we first consider

---

[1]Appellant's motion for leave to file a supplemental brief is therefore denied as moot.

[2]In the past, we have reviewed the application of the § 3B1.3 enhancement as a single mixed question of law and fact subject to de novo review. *See, e.g., United States v. Brickey*, 289 F.3d 1144, 1153 (9th Cir. 2002). More recently, following *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), we held that we generally "review de novo the district court's interpretation of the United States Sentencing Guidelines, review for clear error the district court's factual determinations, and review for abuse of discretion the district court's applications of the Guidelines to the facts." *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008) (formatting and citations omitted). Because we address solely the legal question of the interpretation of the Guidelines in this case, we need not harmonize these different approaches here. *See generally United States v. Thornton*, 511 F.3d 1221, 1227 n.4 (9th Cir. 2008) (noting but declining to resolve the same issue).

whether the district court committed significant procedural error . . . ." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007)). Such significant procedural error includes incorrectly calculating the applicable Guidelines range. *Id.*

## II.   Background

Contreras worked as a prison cook at Ironwood State Prison in Blythe, California. As a prison employee, she was subject to only a cursory search when she entered the prison each day, and enjoyed unmonitored contact with inmates in the prison kitchen.

Relying on these liberties, Contreras began smuggling drugs into Ironwood. She hid the drugs in her lunch bag, often using cans of iced tea outfitted with false compartments to foil any inspections. Once inside the prison, she distributed the drugs to inmates involved in the smuggling ring. She was paid for her efforts, and successfully managed to smuggle heroin, methamphetamine, and marijuana into Ironwood.

An independent investigation by the DEA uncovered Contreras' activities, and she eventually pled guilty to one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)-(B), 846.

The district court sentenced Contreras to 41 months' imprisonment after determining that she had a criminal history category of I and a total offense level of 22, yielding a sentencing range of 41 to 51 months. The offense level included a two-level enhancement for the abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3. The court applied the enhancement because Contreras' "position as an employee provided her with additional freedom so that she could commit the offense."

Contreras now appeals the application of the abuse-of-trust enhancement.

### III.   Discussion

[1] The United States Sentencing Guidelines call for a two-level increase in a defendant's offense level if "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Applying the enhancement requires a two-part inquiry: First, did the defendant hold a "position of public or private trust" within the meaning of the Guidelines? Second, if so, did the position "significantly facilitate" the commission of the crime? *See, e.g., United States v. Hoskins*, 282 F.3d 772, 778 (9th Cir. 2002) (applying test). This case turns solely on the first question and requires us to clarify the meaning of a "position of trust."

Prior to 1993, the Sentencing Commission offered little guidance on this question. The commentary accompanying § 3B1.3 provided only that the position "must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3 cmt. n.1 (1990).[3]

[2] Operating under this spare formulation, we held that the hallmark of a position of trust was "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *Hill*, 915 F.2d at 506. The two indicia of such a posi-

---

[3]Application notes, such as this one, "are treated as authoritative interpretations of the Sentencing Guidelines, unless they violate the Constitution or a federal statute or are inconsistent with, or a plainly erroneous reading of, the Guideline they are meant to interpret." *United States v. Rising Sun*, 522 F.3d 989, 996 (9th Cir. 2008).

tion are the "inability of the trustor objectively and expediently to determine the trustee's honesty" and the "ease with which the trustee's activities can be observed." *Id.* Applying these factors, the *Hill* court found that a truck driver was in a position of trust when he stole the goods he was entrusted to transport. *Id.* at 507.

In 1993, however, the Sentencing Commission substantially reformulated application note 1 to "better distinguish cases warranting the enhancement." U.S.S.G. app. C, amend. 492 (effective Nov. 1, 1993). The version of the commentary under which Contreras was sentenced now reads:

> "Public or private trust" refers to a position of public or private trust characterized by *professional or managerial discretion* (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3 cmt. n.1 (2005) (emphasis added).

**[3]** It seems clear that the *Hill* test should not have survived the 1993 amendments. Whereas *Hill* assessed whether a defendant had the "freedom" to commit a crime without "quick notice," 915 F.2d at 506, the commentary instead emphasizes "professional or managerial discretion." By the test's plain text, the element of discretion — not ease of detection — is the "decisive factor" in the enhancement. *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000). It is the "explicit focus" of the Guidelines. *United States v. West*, 56 F.3d 216, 219 (D.C. Cir. 1995); *see also United States v. Reccko*, 151 F.3d 29, 32 (1st Cir. 1998) (professional or managerial discretion is "the signature characteristic of a position of trust").

Application note 1 reinforces this conclusion by distinguishing various occupations, noting that the enhancement might apply to an attorney, physician, or bank executive, but not to an "ordinary bank teller or hotel clerk." U.S.S.G. § 3B1.3 cmt. n.1 (2005). We have previously held that the listing of professions in the commentary demands "reasoning by analogy, not just reference to dictionary definitions," and that therefore a position of trust refers to "people trained or employed at a high level." *United States v. Lee*, 296 F.3d 792, 798-99 (9th Cir. 2002) (construing the "special skills" enhancement of § 3B1.3); *see also Tribble*, 206 F.3d at 637 ("the examples given . . . imply that the inherent nature of the work itself should naturally convey a substantial degree of discretion").

**[4]** The new language of the application note "places a significant limit on the types of positions subject to the abuse-of-trust enhancement." *West*, 56 F.3d at 220. For example, while a low-level clerk might have the freedom to act "without detection" or be "difficult to observe" under *Hill*, *United States v. Oplinger*, 150 F.3d 1061, 1069-70 (9th Cir. 1998) (applying *Hill*), such a person plainly lacks "professional or managerial discretion," and therefore does not occupy a position of trust under the Guidelines. To the degree *Hill* counsels

otherwise, it is incompatible with the revised commentary to § 3B1.3.

Because the 1993 amendments changed the scope of the enhancement, other circuits have recognized that pre-1993 caselaw is "not particularly helpful" in applying § 3B1.3, *United States v. Jankowski*, 194 F.3d 878, 884 n.5 (8th Cir. 1999), and "has no bearing" on the sentencing analysis, *Reccko*, 151 F.3d at 33. Our court has also looked on pre-1993 caselaw with disfavor, declining to follow other circuits in extending § 3B1.3 to familial relationships because, in part, those courts relied on "the older version of the application note." *United States v. Willard*, 230 F.3d 1093, 1097 (9th Cir. 2000).

Notwithstanding *Willard* or the 1993 amendments, however, this court has continued to employ the *Hill* test for all business, employment, and professional relationships. *See, e.g., United States v. Peyton*, 353 F.3d 1080 (9th Cir. 2003); *Brickey*, 289 F.3d 1144; *United States v. Medrano*, 241 F.3d 740 (9th Cir. 2001); *United States v. Velez*, 185 F.3d 1048 (9th Cir. 1999); *United States v. Isaacson*, 155 F.3d 1083 (9th Cir. 1998); *Oplinger*, 150 F.3d 1061. None of these cases, however, analyzed the effect of the amended commentary, acknowledged that *Hill* preceded that change, or attempted to reconcile the two standards.[4] The resulting confusion is evident in our caselaw. Continued use of the *Hill* test after 1993 has swept up bank tellers, post office clerks, and supply officers in the enhancement — though none held a position of "professional or managerial discretion." *See Medrano*, 241 F.3d at 746 ("bank teller"); *Isaacson*, 155 F.3d at 1086 ("head vault teller"); *United States v. Botroff*, 1997 U.S. App. LEXIS

---

[4]One panel even appears to have labored under the misconception that *Hill* was decided *in response to* the 1993 amendments. *See United States v. McCoy*, 1996 WL 495062, at *6-*7 (9th Cir. Aug. 29, 1996) (quoting 1993 amendments and then referring to *Hill*'s "comprehensive discussion of this provision").

24665 (9th Cir. Sept. 8, 1997) ("window clerk"); *Oplinger*, 150 F.3d at 1069 ("supply coordinator").

One panel also specifically rejected any exemption for "low-level" employees, because the requirement that a defendant exercise a "special level of responsibility or seniority" to be in a position of trust "has no basis in the language of the Guidelines." *Oplinger*, 150 F.3d at 1069. The fact is, however, that the language of the Guidelines contains *exactly* such a requirement. Thus, we conclude that the *Oplinger* panel, like the others to apply *Hill* since 1993, simply failed to recognize or address the change in the law.

We recognize the general rule that a subsequent panel of this court cannot overrule a prior panel. *See, e.g., United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992). Circuit precedent, however, loses its binding force when an "en banc decision, Supreme Court decision, or subsequent legislation undermines" that precedent. *Baker v. Delta Air Lines, Inc.*, 6 F.3d 632, 637 (9th Cir. 1993). Because the commentary to the Guidelines is "authoritative," *Stinson v. United States*, 508 U.S. 36, 38 (1993), the first panel to apply § 3B1.3 after the 1993 amendments should have explicitly reconciled the new commentary with *Hill* — or else discarded *Hill* entirely; instead, it simply overlooked the 1993 amendments. No panel has yet addressed § 3B1.3 since the 1993 amendments. Instead, all subsequent panels have ignored the obvious tension between the 1993 amendments and *Hill*, without addressing or analyzing the change in the law.

In these circumstances, appellate courts have held, for example, that a prior panel that does not address or acknowledge binding Supreme Court authority does not bind a later panel, which must follow the Supreme Court decision, not the circuit precedent. *See, e.g., Atl. Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 838 n.2 (Fed. Cir. 1992) ("A decision that fails to consider Supreme Court precedent does not control if the court determines that the prior panel would have

reached a different conclusion if it had considered controlling precedent"), *reh'g en banc denied*, 974 F.2d 1279 (Fed. Cir. 1992)*; Tucker v. Phyfer*, 819 F.2d 1030, 1035 n.7 (11th Cir. 1987) (prior circuit decision that "decided the case without any reference" to controlling Supreme Court opinions did not bind later panel) (*questioned by Smith v. GTE Corp.*, 236 F.3d 1292, 1302-03 (11th Cir. 2001)); *Wilson v. Taylor*, 658 F.2d 1021, 1035 (5th Cir. Unit B Oct. 1981) (subsequent panel not bound by prior decision that "did not purport to interpret" a binding Supreme Court decision). *Cf. Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (recognizing that where intervening authority, there Supreme Court precedent, "is clearly irreconcilable with our prior circuit authority," "a three-judge panel . . . should consider [itself] bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled").

We face a similar situation. No panel has attempted to reconcile *Hill* with the 1993 amendments, or recognized that *Hill* was formulated under language that has since been deleted entirely from the Guidelines.

To be sure, some panels have used both *Hill* and the "professional or managerial discretion" standard to analyze the application of the enhancement, typically because both tests pointed in the same direction. *See, e.g., Hoskins*, 282 F.3d at 778-79 (noting that a store security guard who needed permission to take a bathroom break lacked any "professional or managerial discretion," and also that the "two *Hill* indicia are noticeably absent"); *Brickey*, 289 F.3d at 1154-55 (applying enhancement to border guard who had "wide discretion in deciding whom to admit into the United States" and whose smuggling would be difficult to detect by the government under *Hill*).[5] We cannot reconcile the two tests in this case, however, because the two are at loggerheads.

---

[5]We note, however, that merely having "discretion" in one's job is not the touchstone of a position of trust; the defendant must have "*profes-*

Without a doubt, Contreras' position at the prison gave her the "freedom to commit a difficult-to-detect wrong," and she therefore occupied a position of trust, as construed by *Hill*. *See* 915 F.2d at 506. As a prison cook, she enjoyed unmonitored contact with the inmates, and was not thoroughly searched upon entering the prison. Her job helped conceal the crime — the touchstone inquiry under *Hill*.

**[5]** Equally certain, however, is the fact that Contreras was not a supervisor, professional, or manager. She held no significant position of authority at Ironwood and exercised no "professional or managerial discretion." Her position was far closer to — if not almost identical with — that of an ordinary bank teller or hotel clerk, persons the application note specifically instructs are not subject to the enhancement.

**[6]** This case is on all fours with *United States v. Long*, 122 F.3d 1360 (11th Cir. 1997), in which the court reversed a position-of-trust enhancement for a prison cook, because the fact that the defendant "could enter the prison without being searched" did not demonstrate the necessary discretion, and because to hold otherwise "would extend [§ 3B1.3] to virtually every employment situation." *Id.* at 1366. We agree with the reasoning of *Long*.

**[7]** We conclude that to the extent *Hill* conflicts with application note 1 of § 3B1.3, *Hill* is no longer good law; it has been overruled by the 1993 amendments to § 3B1.3's commentary.

---

*sional or managerial* discretion." U.S.S.G. § 3B1.3 cmt. n.1 (2005) (emphasis added). This means the defendant is a " 'professional' or 'manager' who, because of his or her special knowledge, expertise, or managerial authority, is trusted to exercise 'substantial discretionary judgment that is ordinarily given considerable deference.' " *West*, 56 F.3d at 220 (citing application note 1); *see also United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1056 (9th Cir. 2002) (B. Fletcher, J., dissenting in part) ("To determine the meaning of a term in the Guidelines, we apply principles of statutory construction, and except in rare instances, we give terms their plain meaning.").

## IV.   Conclusion

For the reasons set forth above, we reverse the sentence and remand for resentencing without imposition of the § 3B1.3 enhancement.

**REVERSED and REMANDED.**