**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50534 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00890-RGK-1 |
| v. | |
| THOMAS M. JOHNSON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 31, 2010
Pasadena, California

Before: O'SCANNLAIN, GOULD and M. SMITH, Circuit Judges.

Thomas Johnson appeals his conviction and sentence arising out a fraudulent

investment scheme on multiple grounds. As the facts and procedural history are

familiar to the parties, we do not recite them here except as necessary to explain

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

our disposition. We have jurisdiction under 28 U.S.C. § 1291 and

18 U.S.C. § 3742, and we affirm the conviction and sentence.

## I. Motion to Substitute Counsel

Johnson first challenges the district court's denial of his motion to substitute

retained counsel in place of appointed counsel.[1] We consider: "(1) the timeliness

of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into

defendant's complaint; and (3) whether the conflict between the defendant and his

counsel was so great that it resulted in a total lack of communication preventing an

adequate defense." *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 (9th

Cir. 1991), *abrogated in part on other grounds*, *Bailey v. United States*, 516 U.S.

137 (1995). All three factors support the district court's decision.

First, Johnson filed his motion to substitute counsel four days prior to trial.

The district court had previously continued the trial for more than three months.

The Supreme Court has explicitly "recognized a trial court's wide latitude in

---

[1]In the district court, Johnson filed his motion under the caption
"Defendant's Ex Parte Request to Permit Substitution of Counsel and Continue
Trial." Because Johnson presented two separate issues to the district court, the
district court's decision "can be analyzed either as the denial of a continuance or as
the denial of a motion to substitute counsel." *United States v. Nguyen*, 262 F.3d
998, 1001 (9th Cir. 2001). On appeal, Johnson's arguments and supporting case
law focus solely on the request to substitute of counsel, not the request to continue
trial. We adopt Johnson's approach for purposes of this appeal.

balancing the right to counsel of choice . . . against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (citation omitted).

Second, the district court adequately inquired into the nature of Johnson's complaint against his attorney. The court held a closed hearing with Johnson, his original appointed attorney, and his newly retained attorney. The court asked both Johnson and his appointed attorney about the reasons for Johnson's belated requested. This is precisely the type of inquiry we have required. *See, e.g., United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001) ("For an inquiry regarding substitution of counsel to be sufficient, the trial court should question the attorney or defendant privately and in depth[.]" (citations and internal quotation marks omitted)).

Finally, the district court reasonably determined that the conflict between Johnson and his attorney would not "prevent[] an adequate defense." *Torres-Rodriguez*, 930 F.2d at 1380. After Johnson stated that "[his] ability to articulate [his] point of view was not properly addressed" by his attorney, the district court properly "t[o]l[d] [Johnson] that he had the right to testify and gave him an opportunity to confer with his attorney to finalize his decision." *United States v. Joelson*, 7 F.3d 174, 178 (9th Cir. 1993). Johnson stated on the record that he understood that "whether or not to testify was [his] call." He also stated

that his attorney had explained the advantages and disadvantages of giving such testimony. Once the district court was satisfied that Johnson understood his right to testify, it properly refrained from inquiring further into the tactical dispute between Johnson and his counsel. As we have explained, "judicial interference with this strategic decision poses a danger that the judge will appear to encourage the defendant to invoke or waive this right." *Id.* at 178 (internal quotation marks omitted). Finally, at the close of evidence, the court asked Johnson whether or not he would testify, and Johnson replied that he would not.

Accordingly, we conclude that the district court did not abuse its discretion by denying Johnson's motion to substitute counsel.

## II.  Jencks Act and *Brady* Violations

Johnson's second contention is that we should conduct an *in camera* review of FBI agent Marie Kondzielski's redacted grand jury testimony for potential impeachment evidence that was withheld in violation of the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83 (1963). After we remanded this case with directions for the district court to review the withheld material, the district court concluded that "Special Agent Marie Konzielski's redacted testimony was immaterial and non-exculpatory and does not in any way contradict her testimony

-4-

at trial" and accordingly held that "Defendant is . . . not entitled to a new trial under 18 U.S.C. § 3500."

Having reviewed the government's full *in camera* submission, we agree with the district court's conclusion. The redacted testimony is consistent with the evidence produced at trial, and therefore would have been irrelevant for impeachment purposes. The district court correctly concluded that the government's Jencks Act violation was harmless error. *See United States v. Ogbuehi*, 18 F.3d 807, 811 (9th Cir. 1994) ("Deciding whether any [Jencks Act] error was harmless necessarily requires determining whether the statement could have been used for impeachment purposes."). For the same reason, we also conclude that the government did not violate *Brady v. Maryland*, as the withheld testimony was not "material either to guilt or to punishment." *Brady*, 373 U.S. at 87.

## III.   Abuse of Trust Sentencing Enhancement

Johnson's final contention is that the district court erred by imposing a two-level upward adjustment because Johnson "abused a position of . . . private trust." U.S.S.G. § 3B1.3. The district court concluded that "there's no question in this case with this scheme that there was a position of trust that [Johnson was] involved [in] with this victim."

The abuse of trust enhancement is "characterized by professional or managerial discretion" and applies if the defendant purports to "legitimately hold[] a position of . . . trust when, in fact, the defendant does not." U.S.S.G. § 3B1.3, cmt. n.1, 3. We have explained that "[b]y the test's plain text, the element of discretion . . . is the 'decisive factor' in the enhancement." *United States v. Contreras*, 581 F.3d 1163, 1166 (9th Cir. 2009) (citation omitted), *adopted in relevant part and vacated in part on other grounds*, *United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc) (per curiam). Notably, the Sentencing Commission uses "a defendant who . . . perpetrates a financial fraud by leading an investor to believe the defendant is a legitimate investment broker" as an example of when the enhancement applies. *Id.* § 3B1.3, cmt. n. 3.

The record is replete with evidence establishing that Johnson committed his fraud by claiming to exercise "professional or managerial discretion" over the victim's funds. Johnson persuaded the victim (Britt) that he was an experienced bond trader. Britt entered an agreement with Johnson under which "the deposited funds shall be in an account *controlled by [Johnson]* and may be transferred, withdrawn, hypothecated, liened or encumbered in any manner *at the discretion of [Johnson]* and approval of [Britt]." (Emphasis added.) Although Britt nominally had final approval authority over Johnson's transactions, Johnson retained ultimate

discretion to invest the funds in the account. Pursuant to this agreement, Britt transferred $5.75 million into an account controlled by Johnson. Britt testified that he "did not consider" himself to "ha[ve] authority" over the account. Britt represented to a third party that the account was "at the discretion of Mr. Johnson." Johnson himself noted in an email to Britt that Britt had trusted Johnson with Britt's money.

In light of this evidence, it is clear that Johnson committed the fraud by purporting to exercise investment discretion over the victim's funds. *See United States v. Davuluri*, 239 F.3d 902, 909 (7th Cir. 2001) (holding that abuse of trust enhancement applied where defendant had discretion to engage in commodities transactions on victim's behalf without victim's supervision). The district court properly applied the abuse of trust enhancement.

**AFFIRMED.**