**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

BRYAN LAURIENTI,
            *Defendant-Appellant*.

No. 11-50294

D.C. No.
2:03-cr-00620-TJH-3

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted
February 11, 2013—Pasadena, California

Filed September 30, 2013

Before: Marsha S. Berzon and Paul J. Watford, Circuit
Judges, and James G. Carr, Senior District Judge.[*]

Opinion by Judge Carr

---

[*] The Honorable James G. Carr, Senior District Judge for the U.S.
District Court for the Northern District of Ohio, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed a sentence imposed for conspiracy to commit securities fraud and securities fraud by use of manipulative and deceptive devices.

The panel held that the district court properly denied the defendant's motion for an evidentiary hearing to determine whether the defendant knew of Rule 10b-5, where he had ample opportunity to present information showing he lacked knowledge of the substance of the rule, and his lack-of-knowledge claim is implausible. The panel held that the district court did not err in failing to provide specific reasons for rejecting the defense.

The panel held that the district court did not err in applying to the defendant, a stock broker, an enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3, given the professional discretion the defendant exercised in selecting the securities to recommend, and the deference his recommendations received in light of his special knowledge and expertise.

The panel rejected the defendant's contentions that the district court was not attentive to his mitigation arguments and that the sentence was substantively unreasonable.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Lisa Shinar (argued) and Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Ellen R. Meltzer, (argued) Special Counsel, Fraud Section, Criminal Division; Lanny A. Breuer, Assistant Attorney General; John D. Buretta, Acting Deputy Assistant Attorney General; André Birotte, Jr., United States Attorney; and Keri Curtis Axel, Assistant United States Attorney, Central District of California, United States Department of Justice, Washington, D.C., for Plaintiff-Appellee.

## OPINION

CARR, Senior District Judge:

Defendant-appellant, Bryan Laurienti, appeals the district court's order sentencing him to thirty-six months' imprisonment and three years' supervised release. A jury convicted Laurienti of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and two counts of securities fraud by use of manipulative and deceptive devices in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (Rule 10b-5). For the following reasons, we affirm.

## I. Factual Background

Laurienti worked as a stock broker at Hampton Porter, an investment firm in San Diego. The firm began selling

extremely cheap and thinly-traded securities.[1] The firm obtained the securities and aggressively stimulated a market for them by promoting them to clients and later dissuading clients from reselling. The firm, and several individuals,[2] bought the securities in their own names at the lower price and later resold their shares at the higher, artificial price they had generated.

The firm did not allow its brokers, including Laurienti, to sell a client's securities while the firm continued promoting them unless the brokers could find another buyer to offset the sale. If the broker failed to follow this policy, and allowed the net number of shares owned by firm clients to decrease, the broker would lose the substantial bonus commission he would have received for selling the securities. In addition to participating in this activity, defendant made unauthorized purchases of client securities and executed cross-trades between clients without notifying them that they were selling to each other. The plan the firm and brokers employed is known as a securities fraud "pump and dump" scheme.

After the stock market declined substantially in 2000, the prices of the inflated securities fell, and clients lost money on their investments. Following the market's overall decline, Hampton Porter went out of business. After an investigation, the government indicted several of Hampton Porter's owners, managers, and senior brokers.

---

[1] Corporations gave the securities to Hampton Porter for a deeply reduced price, and sometimes for free, in return for the firm's promise to promote the securities vigorously.

[2] It does not appear Laurienti bought the securities in his individual capacity.

Before trial, three defendants, John Laurienti,**³** Adam Gilman, and Troy Peters, reached plea agreements with the government. The five remaining defendants, appellant Bryan Laurienti, Michael Losse, David Montesano, Curtiss Parker, and Donald Samaria, stood trial. On December 7, 2006, the jury acquitted Losse, but found the remaining defendants guilty on several counts.

The district court initially sentenced Laurienti to forty months' imprisonment, followed by three years' supervised release, and ordered him to pay $1,136,582 in restitution. Laurienti appealed his conviction and sentence to this court. We affirmed the conviction but vacated the sentence and ordered resentencing. *United States v. Laurienti*, 611 F.3d 530, 559 (9th Cir. 2010). We held that the district court miscalculated his restitution. Further, we held that this court's intervening en banc decision in *United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010), required the district court to reevaluate whether Laurienti abused a position of trust in committing his crime. *Laurienti*, 611 F.3d at 555, 559.

At resentencing, Laurienti requested an evidentiary hearing to determine whether he knew of Rule 10b-5 at the time he committed his offenses. The district court denied the request. The court then sentenced him to thirty-six months' imprisonment on each count, with the sentences to run concurrently. The district court also imposed concurrent supervised release terms of three years on each count. Finally, the court ordered Laurienti to pay $204,682 in restitution.**⁴** In

---

**³** John Laurienti is Laurienti's brother, whom Laurienti described as the "mastermind" behind the scheme.

**⁴** The parties stipulated to the restitution amount at resentencing.

fashioning its sentence, the court imposed a two-level enhancement for abusing a position of trust.

Laurienti appeals his sentence. In addition to challenging the court's refusal to grant an evidentiary hearing and its imposition of the abuse of trust enhancement, Laurienti raises other, less substantial contentions. We find none of his arguments persuasive, and no error on the part of the district court.

## II. Discussion

### A. Evidentiary Hearing

Laurienti first argues the district court erred in failing to hold an evidentiary hearing to determine whether he knew of Rule 10b-5. We disagree, and hold that the district court properly denied his motion for a hearing.

This court reviews a district court's decision whether to hold an evidentiary hearing at sentencing for abuse of discretion. *United States v. Sarno*, 73 F.3d 1470, 1502–03 (9th Cir. 1995).

Section 78ff(a) of Title 15 precludes imprisonment for certain securities violations if the defendant "proves that he had no knowledge of such rule or regulation." *See also United States v. O'Hagan*, 521 U.S. 642, 665–66 (1997) ("To establish a criminal violation of Rule 10b-5, the Government must prove that a person 'willfully' violated the provision.") (internal citations omitted). A defendant bears the burden of proving his lack of knowledge by a preponderance of the evidence. *United States v. Reyes*, 577 F.3d 1069, 1081 (9th Cir. 2009).

We have consistently held that "[t]here is no general right to an evidentiary hearing at sentencing." *United States v. Real-Hernandez*, 90 F.3d 356, 362 (9th Cir. 1996). When a defendant disputes a fact relevant to sentencing, the district court need only provide the parties a "'reasonable opportunity' to present information to the court." *Id*. (quoting Fed. R. Crim. P. 32(c)(3)(A)).

Contrary to Laurienti's argument, he had ample opportunity to present information showing he lacked knowledge of the substance of Rule 10b-5. First, Laurienti could have attempted to present such evidence at trial. After trial, he could have submitted an affidavit stating that he did not know the requirements set forth in the Rule and providing information corroborating that claim. In his brief in support of his motion for an evidentiary hearing, he could have disclosed information to the court indicating that he lacked knowledge of the restrictions contained in the Rule. Because Laurienti failed to present any evidence tending to prove he did not know the requirements of the Rule, the district court did not abuse its discretion in refusing to provide him with another opportunity to do so. *See United States v. Salcido*, 506 F.3d 729, 735 (9th Cir. 2007).

Moreover, Laurienti's claim that he did not know the requirements set forth in Rule 10b-5 is implausible. In a case concerning a defendant similarly experienced in the stock market, this court characterized the defendant's § 78ff(a) claim that he was unaware of Rule 10b-5 as "frivolous." *United States v. D'Honau*, 459 F.2d 73, 75 (9th Cir. 1972). So it is here. Laurienti simply cannot credibly claim, in light of his professional experience, that he was unaware that federal law prohibits securities fraud. He passed the Series 7 and 63 qualifying examinations required to practice as a registered

representative of the National Association of Securities Dealers. These exams include questions about federal and state securities regulations. *See Exch. Services, Inc. v. S.E.C.*, 797 F.2d 188, 189, n.2 (4th Cir. 1986). Six other securities firms employed Laurienti before he began working with Hampton Porter. Laurienti's clients testified he was extremely knowledgeable and experienced in the field, and he held himself out as such. Given the absence of any submission indicating ignorance and in light of Laurienti's experience in the securities industry at the time of his offenses, the district court was entitled to infer that he did know of the restrictions contained in Rule 10b-5 without holding an evidentiary hearing.

The district court did not err in failing to provide specific reasons for rejecting the lack of knowledge defense. The court adequately considered the 18 U.S.C. § 3553 sentencing factors before imposing the sentence, as required by the statute. More importantly, when the court reached the "no knowledge" defense, the only question that remained was whether Laurienti knew his actions violated the rule. By rejecting Laurienti's argument, the court necessarily found he knew of the rule. Laurienti has failed to cite any case in which this or any other court required a sentencing court to make an explicit finding regarding a defendant's knowledge, rather than simply denying the lack of knowledge defense generally.

## B. Abuse of Trust Enhancement

Laurienti next argues the district court erred in imposing a two-level sentencing enhancement for abuse of trust under United States Sentencing Guideline § 3B1.3, which applies when "the defendant abused a position of public or private

trust . . . in a manner that significantly facilitated the commission or concealment of the offense." Laurienti argues that he is ineligible for this enhancement because he did not hold a position of professional or managerial discretion. We disagree and hold that he occupied and abused a position of trust.

This court reviews a district court's interpretation of the Sentencing Guidelines *de novo*, its factual findings for clear error, and its application of the Guidelines to the facts of the case for abuse of discretion. *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008). Whether a defendant acted from a "position of trust" as defined by the Guidelines is a question of law we review *de novo*. *See United States v. Contreras*, 581 F.3d 1163, 1164 (9th Cir. 2009), *aff'd in part, vacated in part en banc*, 593 F.3d 1135 (2010).[5] If we decide that the defendant held a position of trust, we review for clear error the court's decision whether the defendant's abuse of this position significantly facilitated the offense. *Id.* at 1165.

Laurienti argues that this court's decision in *Contreras* precludes the abuse-of-trust enhancement in this case. In *Contreras*, the defendant worked as a prison cook, where she had unmonitored contact with prisoners in the prison kitchen. *Id.* at 1164. Contreras smuggled heroin, methamphetamine, and marijuana into the prison, which she sold to prisoners. *Id.* at 1164–65. The district court imposed a two-level enhancement for abuse of a position of trust under § 3B1.3. *Id.* at 1165.

---

[5] The en banc court affirmed the substance of the panel's opinion, vacating only a portion of it on procedural grounds. *See United States v. Contreras*, 593 F.3d 1135, 1135 (2010) (en banc).

We vacated the sentence, and articulated the proper inquiry a sentencing court should undertake before applying the enhancement: "First, did the defendant hold a 'position of public or private trust' within the meaning of the Guidelines? Second, if so, did the position 'significantly facilitate' the commission of the crime?" *Id.* We made clear that the presence or lack of "professional or managerial discretion" represents the decisive factor in deciding whether a defendant occupied a position of trust. *Id.* at 1166. A defendant has this discretion when, "because of his or her special knowledge, expertise, or managerial authority, [he or she] is trusted to exercise substantial discretionary judgment that is ordinarily given considerable deference." *Id.* at 1168 n.5 (internal quotations and citations omitted). We concluded that Contreras, as a prison cook, did not occupy such a position of trust merely because she enjoyed access to the prison without a thorough search. *Id*. at 1168.

Although we have not had occasion to apply this test in the context of a client-stock broker relationship, the Second Circuit has decided such a case. That court held that the stock broker occupied a position of trust *vis-a-vis* his client investors. *United States v. Santoro*, 302 F.3d 76, 81–82 (2d Cir. 2002). The court stated that when deciding whether a stock broker occupied a position of trust, the relevant question is "whether a reasonable customer, based on his relationship with his broker, would trust the broker to disclose all information in the broker's possession, public and non-public, bearing on the broker's recommended purchase." *Id*. at 82. In concluding that the defendant exercised "substantial discretionary judgment" in deciding which securities to recommend to his clients, the *Santoro* court highlighted the fact that the defendant's coconspirators intentionally developed a personal relationship with the victims. *Id* at 81.

It held that under those circumstances, the defendant's failure to disclose that he would receive a substantial commission for selling the security deprived the victims of material information they needed in deciding whether to purchase the security, which amounted to an abuse of a position of trust. *Id*.

We adopt the Second Circuit's approach. Applying it to this case, we hold that the district court properly found Laurienti held a position of trust that afforded him professional discretion. At sentencing, the government highlighted witness testimony stating that Laurienti recommended securities. The testimony indicated that the witness accepted his recommendations because Laurienti stated he had substantial experience and knowledge in the field. A second witness testified that, although he reserved the right to make the decision whether to execute a transaction, he relied on Laurienti's advice to identify securities that would further his investment objectives.[6] These clients did not merely hire Laurienti to make trades at their direction. Rather, they sought his investment advice, and—as one of the clients put it—"trusted his discretion." This is precisely the kind of relationship we said was required in *Contreras*—one characterized by "substantial discretionary judgment that is ordinarily given considerable deference." *Contreras*, 581 F.3d at 1168 n.5.

In sum, the professional discretion Laurienti exercised in selecting which securities to recommend, and the deference

---

[6] We reject Laurienti's argument that the inquiry turns on the question of who made the "final" decision to purchase or sell a security. While this represents one factor in assessing whether a defendant occupies a position of trust, it is not determinative.

his recommendations received in light of his special knowledge and expertise, afforded him a position of trust. *See id.* at 1165. That position "provide[d] the freedom to commit a difficult-to-detect wrong." *Santoro*, 302 F.3d at 80 (quoting *United States v. Laljie*, 184 F.3d 180 (2d Cir. 1999)). And as in *Santoro*, by failing "to inform his clients that his recommendation was based on the receipt of a significant commission, rather than a fair assessment of the price and quality of the stock," Laurienti abused this position, enabling his fraud. *Id.* at 81; *see also Contreras*, 581 F.3d at 1165. The district court, therefore, did not err in applying the enhancement.

## C. Responding to Mitigation Argument

For the first time on appeal, Laurienti claims that the district court did not listen to his statement in mitigation. This court "review[s] for plain error claims of procedural error at sentencing raised for the first time on appeal." *United States v. Benford*, 574 F.3d 1228, 1231 (9th Cir. 2009); Fed. R. Crim. P. 52. To establish plain error, a defendant must show: 1) an unwaived error; 2) that is "clear or obvious, rather than subject to reasonable dispute;" 3) that affected his substantial rights; and 4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and citations omitted). If a defendant meets these requirements, we may exercise our discretion in deciding whether to correct the error. *Id.*

When determining whether a district court committed procedural error requiring reversal, we consider, *inter alia*, whether the court took the 18 U.S.C. § 3553(a) sentencing factors into account and adequately explained the sentence.

*United States v. Apodaca*, 641 F.3d 1077, 1081 (9th Cir. 2011). A district court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). When a defendant requests a specific departure from the Guidelines-recommended sentence, the district court must explain its decision to reject the request. *Apodaca*, 641 F.3d at 1081. The explanation, however, need only "set forth enough to satisfy the appellate court that [the district court] considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Id*. (internal quotation marks omitted). Because imposing a sentence within the Guidelines "will not necessarily require lengthy explanation," in this context the district court need only "listen[] to the defendant's arguments and . . . simply [find the] circumstances insufficient to warrant a sentence lower than the Guidelines range." *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010) (internal quotation marks omitted).

The district court did not fail to be attentive to Laurienti's contentions as to mitigation. The sentencing transcript demonstrates the court listened to and considered Laurienti's arguments in mitigation but ultimately rejected those arguments. The court twice explicitly stated it considered the § 3553(a) factors. The court explained that it found Laurienti's arguments unpersuasive in light of evidence suggesting he had accepted below-market wages from his family business in an attempt to avoid restitution payments owed his victims. Moreover, having considered Laurienti's arguments in favor of mitigation at length, the court did not err in rejecting the request for leniency.

### D. Refusal to Consider Materials

Laurienti claims for the first time on appeal that the district court committed plain error when it did not read the last two pages of his sentencing memorandum or view a DVD he had submitted. We review these contentions under the same plain error standard applicable to his claim that the district court did not listen to his evidence in mitigation. We reject these contentions for two reasons.

First, the court provided Laurienti the opportunity to present the substance of those materials during sentencing. Laurienti did so, and the court listened to his position.[7]

Second, and more importantly, the court explained why further considering those materials would not change its decision. The court specifically stated that it had reviewed numerous letters from Laurienti's family, friends, and business associates. The court did not, however, find these materials persuasive in light of Laurienti's apparent attempts to avoid making restitution payments. Considering the cumulative nature of the DVD, and the fact that the court allowed Laurienti to discuss his sentencing position at length, Laurienti has failed to establish that the court's refusal to consider the exhibits amounted to plain error requiring reversal.

---

[7] We note in passing that the time that the attorneys and this court have spent on the issue of the unread two pages and unwatched DVD was, in all likelihood, far more extensive (and, for the parties, expensive) than if the court had simply read and watched what was before it. As Benjamin Franklin astutely observed, "An ounce of prevention is worth a pound of cure."

### E. Length of Sentence

Laurienti claims his sentence is unreasonably excessive, and its imposition constitutes substantive error.

We review the length of the sentence imposed by a district court for substantive reasonableness. *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008). Reversal is not justified simply because this court "think[s] a different sentence is appropriate." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Rather, this court should only vacate a sentence if the district court's decision not to impose a lesser sentence was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) (internal quotation marks omitted).

The district court's sentence, which fell in the middle of the Guidelines range, was substantively reasonable. "Although we do not automatically presume reasonableness for a within-Guidelines sentence, 'in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.'" *Treadwell*, 593 F.3d at 1015 (quoting *Carty*, 520 F.3d at 994).

The sentence is reasonable in light of the circumstances in this case. Laurienti engaged in fraudulent conduct, including unauthorized trading in clients' accounts, for approximately two years. He caused substantial losses in his clients' accounts and profited at his clients' expense. He continues, despite the jury's verdict, to deny responsibility for his actions. As the government notes, the mitigating factors he cites are either accounted for by the Guidelines (lack of

criminal history) or common among white-collar defendants (community and family support). The district court listened to and considered Laurienti's mitigating factors, but rejected his plea for leniency. It had good reason to do so, as it appears Laurienti has transferred assets to his ex-wife and engaged in a post-conviction plan to avoid paying restitution. In light of Laurienti's long-term involvement in an elaborate scheme to defraud those who placed their trust in him, we cannot classify the thirty-six month sentence as unreasonable.

Nor does the fact that the district court sentenced Laurienti's brother, John Laurienti, to sixteen months' imprisonment render Laurienti's sentence unreasonable by comparison. To the contrary, "a sentencing disparity based on cooperation is not unreasonable. . . . [S]o long as there is no indication the defendant has been retaliated against for exercising a constitutional right, the government may encourage plea bargains by affording leniency to those who enter pleas. Failure to afford leniency to those who have not demonstrated those attributes on which leniency is based is unequivocally constitutionally proper." *United States v. Carter*, 560 F.3d 1107, 1121 (9th Cir. 2009) (internal quotation marks and alterations omitted). John Laurienti entered into a plea agreement with the government early in his case, and cooperated with the government's investigation. Laurienti has not argued his sentence was imposed in retaliation for exercising his constitutional rights. The difference in sentences, therefore, does not establish that Laurienti's sentence was substantively unreasonable.

**AFFIRMED**.