FILED



**NOT FOR PUBLICATION**

JUN 25 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff - Appellee,<br><br>  v.<br><br>LUCIANA HARMATH,<br><br>          Defendant - Appellant. | No. 10-10350<br><br>D.C. No. 2:06-cr-00058-FCD-5<br><br><br>MEMORANDUM[*] |
| UNITED STATES OF AMERICA,<br><br>          Plaintiff - Appellee,<br><br>  v.<br><br>IOSIF CAZA,<br><br>          Defendant - Appellant. | No. 10-10481<br><br>D.C. No. 2:06-cr-00058-FCD-1 |
| UNITED STATES OF AMERICA,<br><br>          Plaintiff - Appellee,<br><br>  v. | No. 10-10482<br><br>D.C. No. 2:06-cr-00058-FCD-4 |

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

MANJIT KAUR RAI, Esquire,

        Defendant - Appellant.

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JAGPRIT SINGH SEKHON,

        Defendant - Appellant.

No. 10-10483

D.C. No. 2:06-cr-00058-FCD-2

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JAGDIP SINGH SEKHON, Esquire,

        Defendant - Appellant.

No. 10-10485

D.C. No. 2:06-cr-00058-FCD-3

Appeals from the United States District Court
for the Eastern District of California
Frank C. Damrell, Jr., Senior District Judge, Presiding

Argued and Submitted June 9, 2014
San Francisco, California

Before: SCHROEDER, GRABER, and BYBEE, Circuit Judges.

2

Defendants, Luciana Harmath, Iosif Caza, Manjit Rai, Jagprit Sekhon, and Jagdip Sekhon, appeal in this consolidated federal criminal case. Defendants were convicted of conspiring to commit an offense against or to defraud the United States, in violation of 18 U.S.C. § 371, by impeding the lawful functions of the Bureau of Citizenship and Immigration Services or by knowingly submitting false immigration documents, in violation of 18 U.S.C. § 1546 (Count One). All Defendants except for Jagdip Sekhon were convicted of conspiring to defraud or commit an offense against the United States, in violation of 18 U.S.C. § 371, by making false statements in connection with an asylum application, in violation of 18 U.S.C. § 1001 (Count Seventeen). All Defendants except for Jagdip Sekhon also were convicted of one or more counts of aiding and abetting a false statement under 18 U.S.C. § 1001 or 18 U.S.C. § 1546. We affirm in part and, as to Harmath, Caza, Rai, and Jagprit Sekhon, vacate in part and remand for resentencing.

1. We need not decide whether the admission of the foreign stamps and signatures violated Defendants' Sixth Amendment rights because any error was harmless beyond a reasonable doubt. See United States v. Miguel, 111 F.3d 666, 671–72 (9th Cir. 1997) (applying harmless error analysis to a Confrontation Clause claim). There was overwhelming other evidence as to each Defendant's guilt,

3

including testimony from former clients of the firm that the firm instructed them to submit false information; records found at Sekhon & Sekhon's Sacramento office and at Caza's home; and, as to four Defendants, taped conversations in which they helped a confidential informant prepare and submit an application that they knew was false. The result would not have been different for any Defendant even if the stamps and signatures had been disallowed, or if all of the foreign officials and physicians had been required to testify.

2. The district court did not abuse its discretion, United States v. Anekwu, 695 F.3d 967, 971 (9th Cir. 2012), cert. denied, 133 S. Ct. 2379 (2013), by admitting summary charts from Agent Webster that documented similarities across asylum applications. Defendants' argument that the government failed to give them access to the underlying documents, in violation of Federal Rule of Evidence 1006, is unavailing. All of the asylum narratives used in the chart were originally generated by Defendants themselves, and they do not argue otherwise. Furthermore, the government did provide copies of all documents listed on Agent Webster's summary charts, and each chart was entered into evidence together with copies of the narratives it summarized. With respect to Defendants' other Rule 1006 arguments, the district court has broad discretion to admit summary evidence, and we have declined to reverse where, as here, the underlying documents are

admissible.  Id. at 982.  Given the volume of the documents, the district court had discretion to admit this summary evidence.  Finally, the summary evidence was relevant because it demonstrated the probability of asylum fraud in the firm, Fed. R. Evid. 401, and it was not unfairly prejudicial, United States v. Rizk, 660 F.3d 1125, 1132–34 (9th Cir. 2011) (discussing Fed. R. Evid. 403).

Nor did the district court abuse its discretion, United States v. Figueroa-Lopez, 125 F.3d 1241, 1244 (9th Cir. 1997), by allowing Agent Webster to offer lay opinion testimony.  Agent Webster's testimony was "rationally based on [her] perceptions," United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995), and "on [her] general knowledge of the investigation," United States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007), which is a proper foundation for lay opinion testimony.

3.  The district court did not plainly err when it instructed the jury that "an intent to defraud" was "a[n] intent to deceive or cheat."  See United States v. Bhagat, 436 F.3d 1140, 1147 (9th Cir. 2006) (holding that where, as here, the defendant did not object to a jury instruction at trial, we review for plain error).  The district court's jury instruction clearly excluded the acts of legal advocacy that Jagdip Sekhon argues could have been covered under the government's "defraud" theory.  Nor was the government's "defraud" theory overbroad under any of Jagdip

Sekhon's other arguments: The underlying purpose of the conspiracy charged was the submission of <u>fraudulent</u> asylum applications, conduct clearly "proscribed by criminal statute." <u>United States v. Murphy</u>, 809 F.2d 1427, 1432 (9th Cir. 1987).

4. We review de novo whether the district court's denial of jury instructions on a lawyer's duty to clients prevented Jagdip Sekhon and Rai from arguing their theory of the defense. <u>United States v. Duran</u>, 59 F.3d 938, 941 (9th Cir. 1995). There was no error, because the district court provided a legally accurate instruction on a lawyer's duty to clients, and the instructions in their totality allowed Jagdip Sekhon and Rai to argue their theory of the defense. <u>United States v. Thomas</u>, 612 F.3d 1107, 1120 (9th Cir. 2010).

5. We review de novo Jagdip Sekhon's and Harmath's sufficiency of the evidence challenges, viewing the evidence in the light most favorable to the government and affirming if "'<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Rizk</u>, 660 F.3d at 1134 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).

Sufficient evidence supported Jagdip Sekhon's conviction on Count One. Former employees and clients of the firm testified that Jagdip Sekhon's comments reflected an awareness of the ongoing pattern of asylum fraud at the law firm, for which he was one of only two principals; that he faxed template documents to

India to obtain fake declarations for at least one client's asylum application; and that he and Rai provided false details to embellish that application.

Sufficient evidence supported Harmath's convictions on Counts One, Eleven, and Seventeen. Evidence adduced at trial showed that she participated in the confidential informant's initial intake meetings; that she knew that he lived in the state of Georgia, but told him to get a California address and become familiar with the details of that residence; that she knew he did not experience persecution for his faith in Romania, but that he would need to play up his faith and be familiar with the Bible; and that he would need to "study" the story that he would find in his file, be it one of religious or ethnic persecution. This and other evidence adduced at trial was sufficient for a rational trier of fact to find that the pattern of fraud at the firm was so pervasive that Harmath knew about and agreed to participate in the conspiracy.

6. The district court's finding of fact that Caza was connected to more than 100 fraudulent documents was not clearly erroneous, and the district court did not abuse its discretion in applying the Guidelines to that finding. United States v. Yi, 704 F.3d 800, 805 (9th Cir. 2013). The evidence on which the district court relied, including a list of documents distilled from lists presented by the government and Caza, possessed "sufficient indicia of reliability to support its probable accuracy."

7

United States v. August, 86 F.3d 151, 154 (9th Cir. 1996) (internal quotation marks omitted).

7. Where, as here, the issue of multiplicity of convictions and sentences was not raised in the district court, we review for plain error. United States v. Zalapa, 509 F.3d 1060, 1064 (9th Cir. 2007). We apply a five-factor test, reviewing the period of time, location, persons charged, overt acts, and statutes violated, United States v. Guzman, 852 F.2d 1117, 1120 (9th Cir. 1988), to determine whether any rational trier of fact could have found that the government proved separate conspiracies, United States v. Smith, 424 F.3d 992, 1001 (9th Cir. 2005), on Counts One and Seventeen.

We hold that the evidence cannot support a finding of two conspiracies. The period of time, location, and persons charged in Count Seventeen were subsets of the period of time, location, and persons charged in Count One. Three of the six overt acts from Count Seventeen also were charged in Count One, and none of the different overt acts concerned a separate meeting of the minds or conduct that reflected a second, separate conspiracy. Finally, both counts charged a violation of 18 U.S.C. § 371, and although the objects charged were different, all of the objects reflect one underlying agreement to systematically file fraudulent asylum applications for clients of the law firm. The activities described in Count

Seventeen reflected mere "subgroups" acting according to "subagreements" within the overarching conspiracy on Count One, rendering conviction on both counts multiplicitous. Guzman, 852 F.2d at 1120. Because of the potential for collateral consequences, multiplicitous sentences and convictions constitute plain error. Zalapa, 509 F.3d at 1064–65. Accordingly, we hold that the convictions on Count One and Seventeen were multiplicitous. We therefore remand the cases of Harmath, Caza, Rai, and Jagprit Sekhon to the district court, with instructions to vacate one of the two multiplicitous convictions for each of those four Defendants, and to resentence each.[1]

8. Jagdip Sekhon's argument that evidence from multiple conspiracies was used to prove Count One necessarily fails because, for the reasons discussed above, a rational trier of fact could find that the evidence proved a single conspiracy. Therefore, there was no variance between the single conspiracy on which he was charged in the indictment and the evidence adduced at trial. See United States v. Fernandez, 388 F.3d 1199, 1226–27 (9th Cir. 2004) (citing Kotteakos v. United States, 328 U.S. 750 (1946), and holding that, under variance theory, "if the

---

[1] Although only Harmath raised this argument, the government at oral argument conceded that, if the evidence proved only one conspiracy, the multiplicitous convictions should be corrected for each of the four Defendants sentenced on Counts One and Seventeen. Because the error is plain, we agree.

indictment alleges a single conspiracy, but the evidence at trial establishes only that there were multiple unrelated conspiracies, there is insufficient evidence to support the conviction on the crime charged").

9. We review de novo whether Jagdip Sekhon occupied a "position of trust" under U.S.S.G. § 3B1.3. United States v. Laurienti, 731 F.3d 967, 973 (9th Cir. 2013). From the point of view of the victim, the United States government, United States v. Technic Servs., Inc., 314 F.3d 1031, 1048 (9th Cir. 2002), overruled in part on other grounds by United States v. Contreras, 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc) (per curiam), adopting in part United States v. Contreras, 581 F.3d 1163, 1168 n.5 (9th Cir. 2009), Jagdip Sekhon did not "exercise substantial discretionary judgment that is ordinarily given considerable deference," Contreras, 593 F.3d at 1136, adopting 581 F.3d at 1168 n.5 (internal quotation marks omitted).[2] Unlike the clients of a financial advisor who relied on his professional expertise and fraudulent advice to make decisions, Laurienti, 731 F.3d at 973–74, the United States did not rely on Jagdip Sekhon's discretionary judgment. Instead, the government relied on the professional discretion of its own officials: asylum officers and immigration judges. On remand, the district court therefore is

---

[2] We note also that many of the cases on which the parties rely, which use the "difficult to detect" test for the "abuse of trust" enhancement, are no longer good law. Contreras, 593 F.3d at 1136, adopting 581 F.3d at 1168.

10

instructed to resentence Jagprit Sekhon without the "position of trust" enhancement.

**AFFIRMED in part; VACATED and REMANDED in part.**